(No. 39472.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN TAYLOR, Plaintiff in Error.

*Opinion filed January 19, 1967.—Rehearing denied March 27, 1967.*

WARD, J., took no part.

STUART WEST, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KIS-

SANE and E. JAMES GILDEA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In connection with the death of Vearlene Howard on October 5, 1962, the defendant, John Taylor, was indicted for murder, voluntary manslaughter and involuntary manslaughter. The jury found him guilty of murder, and he was sentenced to imprisonment for not less than 20 years nor more than 40 years. The contentions that he advances on this writ of error require that the evidence before the jury be rather fully stated.

The defendant worked as a livery cab driver in Chicago. Shortly before 3 A.M. on the morning of October 5, 1962, the defendant, his "girl friend", and Howard were in a poolroom. Howard asked the defendant to drive him to the Blue World tavern. The defendant agreed, and his "girl friend", Ruth Gray, accompanied them. After they arrived at the tavern the defendant told Howard that the fare was 75¢, and Howard handed him a $10 bill which the defendant said he could not change. Howard then handed him a $1 bill which he was also unable to change so he sent Ruth Gray into the tavern to change it. From this point on there is conflict in the testimony.

The owner of the tavern and a waitress testified for the State that they saw the occurrence through the tavern window. Both testified that Ruth Gray entered the tavern and obtained change for a $1 bill. The owner testified that he watched her return toward the car and that both men were already out of the car. He could not hear their conversation. He testified that the "big man", the defendant, "scuffled" the deceased across the street, where the deceased fell down and the defendant got over him and struck him two or three times with an object he had in his hand. At no time did the witness see the deceased go near Ruth Gray.

He also said that he had locked the door and called the police before the two men wrestled across the street. After the fight the defendant and Ruth Gray drove away and Howard tried to enter the tavern but could not because it was locked. The police arrived within a few minutes, and Howard was taken to a hospital, where he died. Neither a weapon nor a $10 bill was found on his body.

The waitress also testified that she saw the entire episode. She testified that the men were still in the car when the woman left the tavern with the change, that the defendant got out first, pulled the deceased from the car, and held him by the necktie and swung him backward and forward. The deceased was trying to get away, and the defendant took something shiny from his pocket. They struggled across the street. Howard tripped on the curb and fell, and the defendant bent over him and moved his right arm up and down with something shiny in his hand. She said she did not see the deceased near Ruth Gray. She also testified that the owner was not at the window until she called him to come there after the fight began, and that the owner did not call the police until after the fight had ended and Howard "had staggered across the street and was beating on the door."

The defendant testified that Ruth Gray returned, entered the car and gave him the change. He handed 25¢ to Howard, who demanded an additional $9. The defendant told Howard that he did not have his money, that he had returned the $10 bill. The defendant then offered to look in the back seat for the bill, got out of the car and was looking in the back seat when he heard Ruth Gray scream. He went to her side of the car where he saw Howard trying to pull her out, and ordered him to stop. Howard refused and a fight ensued. The defendant testified that during the fight Howard threatened "to blow" the defendant's "brains out" and reached for his pocket. The defendant then drew a knife and, while they were wrestling,

Howard received the knife wound that caused his death.

Ruth Gray testified to· the same effect. She said that after she had returned to the car and .Howard had demanded $9 more, he got out of the car and began acting "like someone who had gone completely mad." She testified that he tried to pull her out of the car and had almost succeeded when the defendant intervened and the fight began. She did not hear Howard threaten the defendant.

. The defendant was arrested at Ruth Gray's apartment later that morning and taken to a police station. From there he was taken to the State's Attorney's office, where he signed a statement that was introduced in evidence. The statement was consistent with some of his testimony, particularly as to Howard's assault upon . Ruth Gray, but omitted certain matters to which he testified, particularly Howard's threat to blow his brains out. The defendant testified that at the time the statement was taken, sometime in the afternoon of October 5, he was nervous and upset from the fight.

The defendant's first contention is that the statement given to the assistant State's Attorney should have been excluded because he was not warned of his right to remain silent and to have the assistance of counsel, as required by *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694. In *Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed.2d 882, the Supreme Court held that the principles of *Escobedo* and *Miranda* applied prospectively. And in *People* v. *McGuire,* 35 Ill.2d 219, *People* v. *Wallace,* 35 .Ill.2d 251, and other cases we have refused to apply those principles retroactively. This defendant was tried in March of 1963. There is no contention here that the statement was not voluntarily made, and we hold that it was properly received in evidence.

The defendant next contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. If the testimony of the witnesses for the prosecution is be-

lieved, however, it was sufficient to establish the crime of murder. Their testimony was that the defendant was the aggressor throughout the fight, and that at no time did Howard offer any threat to the defendant's safety. Their testimony negatived the existence of the provocation relied on by the defendant, for both of these witnesses denied that Howard at any time approached Ruth Gray or offered any violence to her. No weapon was found on the deceased. These circumstances are in our opinion sufficient to establish the crime of murder.

The defendant's contention that the evidence was insufficient is based upon certain discrepancies in the testimony of the prosecution's eyewitnesses, which are said to render their testimony so questionable as to raise doubt in the minds of reasonable persons. The waitress testified that the defendant pulled Howard out of the cab, while the tavern owner testified that when Ruth Gray returned to the cab, both men were standing beside it. The waitress testified that the tavern owner called the police after the deceased had staggered across the street and was beating on the door of the tavern, asking for help. The tavern owner testified that he called the police before the fight started. The two witnesses also disagreed as to whether the tavern owner was standing at the window when the defendant's cab arrived in front of the tavern and as to the lighting conditions in the area. The defendant also points out that the tavern owner testified that the defendant struck the deceased two or three times while the coroner's inquest showed only one wound through the heart and another on the defendant's hand. In our opinion these discrepancies did not render the witnesses so unreliable as to preclude the jury's verdict. Their credibility was for the jury and their testimony that the deceased did not approach or touch Ruth Gray contradicted the defendant's claim of provocation.

While the evidence was thus sufficient in our opinion to sustain a conviction for murder, it was also sufficient to

sustain a conviction for manslaughter if the jury believed the testimony of the defendant, and he contends that the judgment must be reversed because the trial judge did not instruct the jury or submit a form of verdict with respect to that offense. Many decisions of this court have stated that "* * * if there is any evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, an instruction defining that crime should be given. (*People* v. *Brown*, 415 Ill. 23; *People* v. *Newman*, 360 Ill. 226; *People* v. *Beil*, 322 Ill. 434; *People* v. *Tokoly*, 313 Ill. 177.)" (*People* v. *Harris*, 8 Ill.2d 431, 434). Under these authorities it is immaterial that the defendant did not request a manslaughter instruction, or objected to it.

On the other hand it has been held that the failure to give a manslaughter instruction cannot be asserted as a ground for reversal in a reviewing court unless such an instruction has been requested. (*People* v. *Weisberg*, 396 Ill. 412; *People* v. *Harrison*, 395 Ill. 463, 477.) The reason for this rule was thus stated in *People* v. *Lucas*, 244 Ill. 603, 614: "No such instructions having been asked by plaintiff in error, the court had a right to assume that plaintiff in error preferred to submit the case to the jury in such way that the jury would be compelled to find the defendants guilty of murder or not guilty. It was the right of plaintiff in error to submit that question to the jury and require the jury to pass on the question of his guilt or innocence of the crime of murder, and it was not the duty of the court to submit issues and questions to the jury which the parties, by their action, said they did not desire passed upon." This statement was quoted with approval in *People* v. *Harrison*, 395 Ill. 463, 477.

To speak of the "right" of a defendant to require the jury to pass only upon his guilt or innocence of murder is misleading. If a jury trial is waived, the judge determines from the evidence whether the defendant is guilty of murder or of some lesser included offense, and the defendant has

no "right" to restrict the judge's determination to the question of his guilt or innocence of murder. (See, *e.g. People* v. *Green,* 23 Ill.2d 584.) And if the evidence would support a verdict of manslaughter, a defendant will not be heard to complain that a manslaughter instruction was given, even though he did not request it. "Where the record contains evidence upon which a verdict of manslaughter may be returned, the fact that the evidence would have justified the jury in finding the defendant guilty of murder is not a matter of which he can complain." (*People* v. *Beil,* 322 Ill. 434, 440; see also *People* v. *White,* 311 Ill. 356). It is only where the evidence establishes that the defendant is guilty of murder or is not guilty, as for example in cases in which the defense is alibi, or mistaken identity, that a defendant may be said to have a right not to have the jury charged as to lesser included offenses.

The decisions of the court indicate no more than an application of the familiar procedural rule that error cannot be assigned in a reviewing court with respect to a matter upon which the trial court was not called upon to rule. So it has been said, "The general statement contained in the cases, that a manslaughter instruction should be given where there is evidence justifying it, must be understood in the sense the duty exists when such instruction is offered by either side, when the circumstances justify it, but does not apply to cases where no instructions for manslaughter are offered in the case. The failure to give an instruction for manslaughter where none was tendered is not error." *People* v. *Weisberg,* 396 Ill. 412, 422.

The result is that when the evidence in a murder case would support a verdict of manslaughter, and the defendant does not request a manslaughter instruction, the giving of such an instruction is committed to the discretion of the trial judge. The defendant strongly argues that the trial judge should be required to give a manslaughter instruction whenever the evidence warrants it, on the ground that such

a rule would advance the effective administration of justice and would bar the parties from "gambling" upon the outcome. He asserts one of the possible solutions advanced in a comment in 57 N.W. L. Rev 62, 70: "If the evidence does not prove guilt of the greater offense, but is sufficient to establish guilt of the lesser, it would appear to be the prosecution's duty to request the instruction rather than gamble that the jury, faced with a choice between conviction of the greater crime and allowing the defendant to go scot-free, will elect the former. But it seems equally objectionable to require or allow defense counsel to select between an 'all or nothing' situation and a possible compromise verdict. The better requirement would be for the court to give the instruction *sua sponte* whenever it is warranted by the evidence."

These considerations, however, do not seem to face up to the recurrent situation, of which the case before us is typical, in which the evidence may establish guilt of either offense, depending upon the jury's appraisal of the credibility of the witnesses. "If the evidence does not prove guilt of the greater offense," the prosecution is unlikely to "gamble" for a conviction that will not survive an appeal, but will seek an instruction on the included offense.

When the evidence will support either charge and the prosecution does not tender an instruction on the lesser offense, the defendant has a choice, subject to the judge's authority to instruct *sue sponte,* of submitting one or both instructions. Different views have been expressed as to the consequences of submitting both instructions. It has been said that "merciful, or weak jurors may disregard even overwhelming proof of culpability and acquit entirely or convict of a lower crime than the evidence reflects." (*People* v. *Mussenden,* 308 N.Y. 558, 127 N.E.2d 551, 554) It has also been said that to give both instructions "is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his

innocence." Mr. Justice Fortas, dissenting in a different context in *Cichos* v. *Indiana,* 35 U.S. Law Week 4003, 4005, 17 L. Ed. 2d 175.

It may be that more accurate results would be obtained if the trial judge was required to instruct as to both the greater and the lesser offenses whenever the evidence would sustain either verdict, and in some jurisdictions such a requirement has been imposed by statute or by decision. (See Comment, 57 N.W. L. Rev. 62.) But we are not sufficiently persuaded that we are willing to eliminate by judicial decision an established procedure that has long been considered to operate for the benefit of those accused of crime. We therefore adhere to our present procedure, and hold that the trial judge did not err in failing to give a manslaughter instruction on his own initiative.

In exercising his discretion it is appropriate for the judge to consider that from the point of view of the public interest in the punishment of wrongdoers, one whose conduct is unlawful should not escape punishment altogether because a jury does not believe that he is guilty of the greater offense. It is also appropriate for him to consider that from the defendant's point of view, the likelihood of a compromise conviction may be enhanced if the jury is permitted to consider successive offenses involving lesser degrees of criminality. In reaching his conclusion it is not impermissible for the judge to give weight to the views of the prosecution and defense as indicated by their requests for instructions. In the present case the decision of the defendant's attorney not to request manslaughter instructions was clearly stated in response to the trial judge's inquiry, and nothing in the record suggests that the attorney's decision was reached without consultation with his client.

In view of our conclusion that the trial judge was not required to give a manslaughter instruction and since the defendant did not request one, there is no error of which he can complain.

Finally, the defendant urges that if his conviction is not reversed, his sentence should be reduced because the circumstances of the offense do not show a deliberately formed intent to kill, but on the contrary indicate a killing that took place on the spur of the moment, in the course of a fight. He emphasizes that apart from the fact that on February 11, 1946, when he was approximately 15 years old, the defendant was fined for carrying a concealed weapon, he has no criminal record. A majority of the court is of the opinion, however, that the sentence imposed was warranted by the evidence concerning the commission of the crime.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.