THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HAROLD WOOLBRIGHT, Defendant-Appellant.

Second District   No. 78-42

Opinion filed May 8, 1979.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford, and Peter T. Sullivan, III, Public Defender, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, defendant, Harold Woolbright, was found guilty of theft of property under $150 in value (Ill. Rev. Stat. 1975, ch. 38, par. 16—1), and was sentenced to two years probation with the first 60 days to be served on periodic imprisonment. Defendant appeals, contending he was denied a fair trial, first, in that he appeared before the jury during the trial dressed in a county jail uniform, and secondly, by hearsay testimony which was then argued by the State to the jury during closing argument.

The evidence at trial revealed that on April 5, 1977, defendant was in a car driven by Donald Sundell when they drove into a Super America gas station at approximately 9:30 p.m. Super America was also a grocery store; cases of various kinds of soda pop were stacked for sale in front of the store. While Sundell ordered gasoline from the attendant, Donald Zentz, defendant went into the store, obtained the restroom key from the cashier, Brenda Schurman, and walked back to the area where the restrooms were located; he then walked back to the front of the store. Defendant handed the restroom key to Zentz and picked up a case of grape soda pop, informing Zentz that he had already paid for the pop inside. Zentz went inside and learned from Ms. Schurman that the soda pop had not been paid for. Zentz went outside and obtained the license number of the car containing Sundell and the defendant as it pulled out of the station. Zentz then called police; when the officers arrived he gave them a description of the car and the two occupants. Both Zentz and Ms. Schurman identified defendant at trial. According to Zentz, defendant appeared to be intoxicated but that it did not appear to interfere with his ability to communicate; Ms. Schurman remembered nothing unusual about defendant's manner.

After leaving the gas station, defendant and Sundell proceeded to the residence of Mr. and Mrs. Cameron Linder. Defendant asked the Linders if they would like the soda pop for their children; Mr. Linder indicated that they did not care for it. Then, either defendant or Sundell borrowed 50¢ from Mrs. Linder and left saying they were going to buy cigarettes.

Officer Walter Grenen of the Rockford Police Department was on patrol with his partner when they received a description of the car involved in the incident at the Super America gas station. The officers observed a car matching the description parked on Roosevelt and Lapey,

with the interior light on and a door open; the car was unoccupied at the time. The officers turned around and when they came back they saw the car drive away. The officers went to the Linder residence and inquired if someone had just left. The Linders told them that defendant and Sundell had just been there. The officers obtained the case of soda pop from the Linders and Grenen identified the case of soda pop in court.

After responding to the report of a theft at the Super America gas station, Rockford Police Officer James Barton and his partner received a description of the car and its two occupants. While located on 11th Street, Barton received a report from Officer Grenen and his partner that they had observed a vehicle matching the description and that it was now proceeding towards 11th Street; at that point Barton and his partner spotted the car containing defendant and Sundell. The car was stopped, and defendant and Sundell were taken into custody.

According to defendant, he was intoxicated at the time he obtained the case of soda pop from the Super America gas station; he thought he had paid for the soda pop when he went into the station. While defendant could not recall how many days in a row he had been drinking, he testified that he probably was intoxicated on the day in question because he usually drank. He had also been involved with programs dealing with drinking problems. At the time of his arrest by Officer Barton, defendant had an open bottle of wine in his possession.

We turn first to the issue concerning defendant's attire at trial. On the day of trial, October 3, 1977, following the selection of the jury but prior to the commencement of the trial, defense counsel made a motion that defendant be provided with civilian clothing, as it was prejudicial to have him in front of the jury in the uniform of the Winnebago County jail. The trial court pointed out that defendant had known the trial was coming up since September 27; defense counsel stated that defendant had been incarcerated during this time. The trial court then asked if defendant had any family in the area and defendant responded that he did. The assistant state's attorney suggested that defendant wear the clothes he was arrested in; however, defense counsel informed the trial court that it had been raining when defendant was arrested and that these clothes would not do defendant any good. While observing that defendant had been sitting in the courtroom during the jury selection in the same attire, the trial court requested defense counsel to see if other clothing had been brought into the county jail that would be suitable for defendant to wear; also the trial court allowed a recess in order to allow defendant's family to bring some clothes for him to wear. However, defendant continued to appear in the county jail uniform.

Defendant relies on *Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691, wherein the United States Supreme Court held that

a State cannot, consistent with the fourteenth amendment, *compel* (emphasis ours) an accused to stand trial before a jury while dressed in identifiable prison clothes. However, the Supreme Court went on to state that the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

■■ Defendant's reliance on *Estelle v. Williams* is misplaced. There is no evidence that defendant here was compelled to wear county jail attire. The record reveals that defendant, after raising an objection about his clothing, had ample opportunity to acquire civilian clothing from several sources. Further, defendant was present in the courtroom while the jury panel was selected, thus the jury had already viewed the defendant in the county jail uniform prior to his objection to his clothing. Finally, defendant when asked on direct examination where he resided, replied, "Right now in the Winnebago County Jail." Thus, the jury was advised of defendant's incarceration, and under the circumstances, we conclude that defendant was not denied a fair trial by appearing before the jury in a county jail uniform. See *People v. Dismuke* (1972), 3 Ill. App. 3d 553, 278 N.E.2d 152.

■■ Next we turn to defendant's contention that he was denied a fair trial due to hearsay testimony and the State's closing argument. On direct examination, Officer Grenen testified as follows in pertinent part:

> "OFFICER GRENEN: * * * I asked what they [defendant and Sundell] were there for at Linders, and they [the Linders] stated that they brought in a case of pop, and they wanted to sell it to the—
>
> MR. SULLIVAN [defense counsel]: I'm going to object to what Mr. Linder said, and ask it be stricken.
>
> THE COURT: Sustained. Disregard that part with the conversation with the Linders outside the presents of the Defendant. That part is stricken.
>
> Q. What happened next?
>
> A. Well, the case of pop was in the kitchen, and they stated that they did not want to give any money for it.
>
> MR. SULLIVAN: Object to the Officer testifying as to the statement, your Honor, and ask it be stricken and the jury to disregard it.
>
> THE COURT: Strike that from the record. The jury will disregard that comment. * * *"

We are of the opinion that the sustaining of defendant's objections coupled with the striking of the testimony and the admonishment to the jury was sufficient to prevent any prejudice to defendant.

■ However, defendant argues further that this court could perhaps find the admonishment to the jury cured the alleged error if it were not for the fact that the State in its closing argument incorporated the theory that defendant was attempting to sell the soda pop and that there was no evidence at trial upon which the State could base this theory of motive other than the hearsay testimony. In closing argument the assistant state's attorney stated,

"* * * I submit there is a motive for taking the case of soda pop. He was drinking, he had been drinking for quite some time, he continued to drink, and he was out of money, and you need money to purchase wine.

All of this is, I submit, very compelling evidence that there is no reasonable doubt that he knew he hadn't paid for the case of soda pop and that when he took it he did intentionally intend to permanently deprive the rightful owner of the use or benefit of said soda pop. * * *"

■ We note that defendant failed to object to the statement at trial and therefore has waived any error. (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622.) Further, we do not consider the statement to be error. It is well settled that statements of the prosecution based on evidence and legitimate inferences to be drawn therefrom do not exceed the bounds of proper argument. (*People v. Williams* (1967), 38 Ill. 2d 115, 125, 230 N.E.2d 224, 230.) To refute the defense of intoxication, the State attempted to show that defendant was acting in a reasonable manner, namely, that the alleged theft was to obtain money to continue his drinking binge, thus suggesting a motive for the alleged theft. Defense counsel himself in closing argument responded to the State's argument by suggesting that if the defendant's motive was to get money for the soda pop, he could have done so by emptying the soda pop from the bottles and returning the empty bottles for a refund of the deposit.

■ Even if we were to consider the statement to be error, given the amount of evidence against defendant, it would be harmless error beyond a reasonable doubt.

Therefore, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

GUILD, P. J., and NASH, J., concur.