THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DUKE JEDLICKA, Defendant-Appellant.

Second District   No. 78-582

Opinion filed May 28, 1980.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial, Duke Jedlicka, a building contractor, was convicted of nine counts of felony theft and two counts of fraudulent conveyance of land. He appeals from the convictions and a resulting sentence of 2-6 years imprisonment. He contends that (1) he was not proved guilty beyond a reasonable doubt of the thefts charged in counts 1, 3 and 7; (2) five of the convictions were carved from only two acts; (3) improper argument of the prosecutor created reversible error as to all counts (defendant was found not guilty on count 5); (4) the court committed reversible error in permitting a common dictionary to go to the jury and in failing to address questions raised by the jury during its deliberations; and (5) alternatively, that the sentence was excessive.

The salient facts will be summarized under the applicable counts of the indictment.

COUNTS 1, 3 AND 7.

In count 1 defendant was charged with theft of property valued in excess of $150, by obtaining a check in the sum of $7,152 from John R. Pirc by executing an agreement to sell a house and lot to Pirc in return for his check * * * "without disclosing an adverse claim to the enjoyment of the aforesaid real estate" (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)(1)); in count 3 defendant was charged with the offense of theft in excess of $150,

by exerting unauthorized control over property of James E. Honquest and Marian T. Honquest, his wife, being their interest in the lot commonly known as 205 Forest Avenue, Lake Zurich, Illinois (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)); and count 7 charged defendant with the offense of theft by exerting unauthorized control over the property of David Murray and Jeanne Murray, being their interest in the real estate commonly known as 164 Forest Avenue, Lake Zurich (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)).

### Honquest

On June 24, 1975, the Honquests contracted with defendant for him to build a home on the lot at 205 Forest Avenue. At that time the Honquests tendered a down payment check to defendant in the amount of $4,824.50. Under the contract the home was to be completed by November 1, 1975.

The lot at 205 Forest Avenue was owned by Tom Joyce, whom Honquest assumed was a partner of defendant. There was an eight-month delay in constructing the home which defendant attributed to the lack of gas and power lines and grading of the road needed to bring heavy equipment to the construction site. In April 1976, the defendant requested another $18,000 from the Honquests in order to satisfy the remaining debt on the down payment which was needed to secure his construction loan. There was talk of putting the $18,000 into an escrow account but that did not materialize. Honquest testified that defendant refused to set up the escrow account but defendant placed the blame on Honquest. Defendant testified that he sent Honquest a cancellation letter on the ground that Honquest had breached the contract by failing to execute the necessary papers to enable the bank to disburse the construction funds.

### Pirc

On April 25, 1976, the defendant and John Pirc entered into a contract for the purchase and sale of the same home and lot at 205 Forest. On that date Pirc tendered a down-payment check made out to the Tracey Corporation, owned by the defendant, in the amount of $7,152. Pirc testified that he was not informed of the previous contract or any possible conflict of title with the Honquests. Sometime in June of 1976, Pirc learned of a civil suit that had been filed by the Honquests against the defendant, but was assured that defendant could satisfy the Honquests and that Pirc would have the home. The defendant testified as to his problems in obtaining financing and difficulties with contractors in building the home. On September 8, 1976, the defendant asked Pirc for an additional $9,000, representing the difference between the cost of the home and Pirc's mortgage commitment. Pirc offered to put the money in

an escrow account, but defendant objected to that manner of handling the money. At that point Pirc demanded his money back from defendant. Pirc sued defendant and obtained a judgment against him which was settled together with the Honquest suit against the defendant. Defendant paid $1,000 to Pirc, and Pirc received an additional $2,900 from the Honquests after the sale of the property to them. The Honquests eventually bought the lot for $12,000 or $13,000 from Joyce.

On March 2, 1976, David Murray contracted with the defendant to have a home built on the land referred to as 164 Forest Avenue. Murray tendered a down payment of $5,472. The contract stated that the house would be built within 120 days of the date of the contract. The 120 days passed and construction had not yet begun. Murray demanded a full refund which defendant promised but never delivered to him. Defendant sent Murray a letter claiming that Murray had defaulted on the contract and thus there would be no refund. Defendant testified that he wrote the cancellation letter because Murray refused to sign the required papers at the bank in order to execute his mortgage. Murray filed suit and obtained a judgment against the defendant. He did not receive any money from defendant but was paid by one Paul Roraff as a part of a settlement when the Roraffs bought the property later.

On November 3, 1976, defendant and Paul Roraff executed a contract for the purchase and sale of the property at 164 Forest Avenue and for the construction of a home on the lot. The Roraffs lived in the home at 205 Forest while the construction was going on at the 164 Forest site. Sometime in May of 1977, the Murrays' attorney asked the Roraffs what interest they had in the home located at 164 Forest and it was discovered that a *lis pendens* had been filed against the property. A settlement was eventually reached between the defendant, the Murrays and the Roraffs which included a payment of money from the Roraffs to the Murrays. The Roraffs purchased the lot from one James Leiding to obtain title. At the time of settlement, the home was about 85% completed and the remaining construction was financed by the Roraffs.

■■ These three counts involve the alleged double sales of the same property. As the indictments are drawn, counts 3 and 7 are based on the theory that defendant exerted unauthorized control over properties of the Honquests and the Murrays, being their alleged interest in 205 Forest and 164 Forest, respectively, while count 1 charged the theft by deception of Pirc's down payment without disclosing an adverse claim to the property supposedly sold to the Honquests. In these circumstances, defendant's argument that he could not have stolen the property interests of the named parties because they never acquired an interest in any property is persuasive. The defendant at no time had title. Therefore he could pass no title on to the buyer or any other possessory interest shown by the

evidence and thus the defendant could not have affected the buyers' property interests at any time. The building contracts entered into between defendant and the Honquests and the Murrays do not purport to transfer any property interest in the underlying lots.

Count 1 is brought on a different theory than counts 3 and 7, that is, theft by deception. "Deception" is defined as

"(d) * * * failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 15—4.)

Under the facts, the contract claims which the Honquests had against the defendant would not operate as a legal impediment against the property since the Honquests received no property interest from the defendant who could give none.

There is a reference in the contracts to another agreement which suggests that defendant purported to sell the underlying lots. However, that agreement does not appear of record, and it is therefore not before us.

■■ While it would appear clear that the underlying facts disclose what the jury could well find to be a criminal offense, neither the charge nor the proof adduced in connection with those counts show the offense of theft beyond a reasonable doubt. We therefore reverse the judgment of conviction insofar as it is based on counts 1, 3 and 7 of the indictment.

COUNTS 2 AND 6.

In count 2 of the indictment defendant was charged with the offense of fraudulent conveyance of land (Ill. Rev. Stat. 1975, ch. 30, par. 201). Count 2 involved the same purported transactions with the Honquests and Pirc as to the property at 205 Forest Avenue charged as a theft in counts 1 and 3 but proceeded under the offense of fraudulent conveyance of land (Ill. Rev. Stat. 1975, ch. 30, par. 201). Similarly, count 6 involved the same transaction charged as theft in count 7 of the indictment, but charged as a fraudulent conveyance of land.

The defendant is not urging under this theory that he is entitled to an outright reversal of the convictions of the offense of fraudulent conveyance of land under counts 2 and 6 of the indictment. He argues, rather, that the theft charges (counts 1, 3, 7) and the fraudulent conveyance charges (counts 2, 6) were carved out of the same act and that the duplicitous convictions and resulting sentences cannot stand, citing *People v. King* (1977), 66 Ill. 2d 551.

In view of our holding that the defendant was not proved guilty beyond a reasonable doubt of the theft charges in counts 1 and 3

involving the Pirc-Honquest transaction, and in count 7 involving the Murray transaction, the argument is moot.

■■ We conclude, however, that the defendant was properly convicted of the two offenses charging fraudulent conveyance of land. The statute provides in effect that the person after once selling any tract or executing any agreement for the sale of any lands "who shall again knowingly and fraudulently sell * * * or * * * execute any * * * agreement to sell" to any other person for a valuable consideration is guilty of the felony. (Ill. Rev. Stat. 1975, ch. 30, par. 201.) The proof shows beyond a reasonable doubt that defendant took Honquests' money and promised to construct a home for them on a given parcel of real estate and to convey ownership of the house and lot to them upon completion and that he then sold the same lot to John Pirc (count 2); and that defendant similarly promised to construct a home for the Murrays and instead knowingly and fraudulently executed an agreement for the sale of the same parcel to the Roraffs (count 6).

Counts 4, 8, 9, 11 and 12.

These counts each charge defendant with theft by deception in that he obtained down payment checks from five different individuals pursuant to building contracts, on which he never intended to perform. Four of the counts related to a development project in which outside persons invested. Defendant does not contest the sufficiency of evidence as to these five counts, but argues that certain trial errors were so prejudicial as to require a new trial.

Claims of Reversible Error in the Conduct of the Trial.

Defendant argues that he is entitled to a new trial in any event because of various trial errors which he claims infected all of the convictions.

*The Prosecutor's Argument.*

■■ We do not find cause for reversal in the argument of the prosecutor to the jury of which defendant complains. Defendant claims that the prosecution misled the jury into believing that it was unnecessary to prove that the defendant intended to permanently deprive the victims of their property in order to find defendant guilty of theft. The defendant did not object at trial or in his post-trial motion and has waived the claim of error in any event. (*People v. Woolbright* (1979), 71 Ill. App. 3d 365, 369.) Further, since we have held that three of the theft charges must be reversed and inasmuch as the argument in question applied to those charges the claim has become moot.

■■ Defendant's claim that he was denied a fair trial because the prosecutor commented on the failure of the defendant to produce Tom

Joyce and any subcontractors to testify at trial is also not persuasive. In this case the argument was objected to and the objection was promptly sustained. Under all the circumstances it is doubtful that the remarks were, in fact, error. Defense counsel in argument had referred to Joyce and the other subcontractors in aid of the theory that defendant was unable to perform on the various contracts due to his inability to obtain financing and because of various building problems with the subcontractors. Generally, an invited response is not error. (*People v. Banks* (1979), 70 Ill. App. 3d 51, 55.) Also considering the fact that the objection was promptly sustained and the claim of error was not included in defendant's post-trial motion, any possible prejudice is not elevated to consideration as plain error. See *People v. Bonzi* (1978), 65 Ill. App. 3d 927, 934.

■■ The prosecutor also referred to the defendant as an "artist of deception" and as the "duke of deception." He also interwove comments as to the facts in this case with references to the typical operation of a "deception artist." Defendant argues that these comments unfairly characterized him as an habitual criminal despite the fact that he had no prior convictions. While no objection was made at trial and the issue was not included in defendant's post-trial motion, defendant argues that we should consider the matter as plain error. In view of the fact that the defendant was charged with a number of crimes and the jury could have reasonably inferred from the argument that the prosecutor was referring to the crimes charged in the indictment, we conclude that the matter is not plain error which would require reversal.

*Failure to address questions raised by jurors during their deliberations.*
After 12 hours of deliberations the jury sent a note with four questions to the court:

"1. When the defendant 'by deception knowingly obtains control over a down payment'—does the word 'deception' apply under 2 of instructions—fail to correct a false impression etc., etc. apply only at the moment of payment or to the entire contractual time period?

2. What is the time frame or time length meant as pertaining to 'permanently deprive' in the instructions?

3. In the case where a 'unanimous decision' cannot be made on a given charge and/or charges; either guilty or not guilty—what advise [*sic*] or recommendations could you give?

4. Is it legal to use one person's down payment on other expenses not related to that transaction. *Is* this an act of deception?"

The court answered, "A careful reading of the instructions plus the common meaning of the other words should be sufficient to answer your questions."

As to question 2, Illinois Pattern Jury Instruction, Criminal, No. 13.15 (1968) (hereinafter IPI), which defines "permanently deprive," was given. As to question 4, whether it was legal to use one person's down payment on unrelated expenses, a further attempt to instruct the jury could have been confusing and possibly misleading. The acts in question could be construed as part of the deception or they could not be, depending on the jurors' view of the other evidence and their view of the defendant's intention. The answer to the question as to the unanimous decision problem was also within the trial judge's discretion. *People v. Preston* (1979), 76 Ill. 2d 274, 283.

A more serious question is whether the court properly refused to advise the jury further in answer to its first question, which essentially was whether the deception must have occurred at the time of obtaining the checks.

Counts 4, 8, 9, 11 and 12 are involved and charged theft by deception of down payment checks of five different persons in that defendant contracted to build a house intending not to perform. Relative to these charges the court gave instructions based upon IPI Criminal No. 13.04, including the language,

> "Second: That the defendant by deception knowingly obtained control over the down payment check; and
>
> Third: That the defendant intended to deprive [the named victim] permanently of the use or benefit of the down payment check."

It is apparent from the questions of the jury that they were in doubt as to whether the acts of obtaining control over a victim's check and the intent to deceive were required to exist at the same time. The defendant argues that the court was obligated to dispel this apparent confusion by a more adequate answer to their inquiry than merely referring them to the instructions and their knowledge of the common meaning of words. The State argues on the other hand that there can be no prejudice because it is obvious from the language of the instructions that the deceptions had to occur contemporaneously with defendant's obtaining control over the victim's check.

We have recently stated:

> " 'Where a jury has raised an explicit question on a point of law arising from facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members.' (*People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622, 627.) This is true even though the jury was initially given proper instructions." (*People v. Morris* (1980), 81 Ill. App. 3d 288, 290-91.)

In *Morris*, we found that there was some basis for the jury's confusion on an essential question of accountability and it was therefore reversible

error for the trial court to refuse a proper answer to the jury's inquiry. We find this case to be distinguishable on its facts, however. In *Morris*, the jury in essence was concerned about whether the inference arising from possession of recently stolen property could be applied if the defendant "himself" may never have illegally entered the building or removed the property. In essence the jury was concerned about guilt under an accountability theory. No instruction, however, had been tendered by the State on an accountability theory and the admonition of the court to follow the instruction in no way could dispel the jury's confusion.

■■ Here, the instruction given to the jury in the exact form of IPI Criminal No. 13.04 told the jury that it must find that the defendant by deception knowingly obtained control over the down-payment check and, conjunctively, intended to deprive the presenter permanently of its use or benefit. The court's admonition here to follow the instruction should have in fact dispelled any confusion the jury may have had about whether they could consider acts at any later time during the entire contractual time period. We therefore find no error in the judge's response to the jury's questions.

The defendant also argues a further claim that the court erred by delivering to the jurors a common dictionary. The State concedes that "better practice militates against giving a dictionary to the jury," and we agree. The more basic question is whether or not the giving of the dictionary to the jury under the circumstances of this case amounted to prejudicial error. We conclude that it did not.

■■ A trial judge, when dealing with a jury that appears to be deadlocked, should not leave it "to grope in such circumstances without some guidance from the court." (*People v. Prim* (1972), 53 Ill. 2d 62, 74. See also *People v. Pankey* (1978), 58 Ill. App. 3d 924, 927.) In *Pankey*, reversible error was found in the giving to the jury of "a new judge's creed" which had the effect of coercing those in the minority to heed the majority for the mere purpose of returning a verdict, contrary to the admonition by the Illinois Supreme Court in *Prim*. While we do not condone the giving of a common dictionary to a jury which is experiencing difficulties in reaching a verdict, we do not see the same danger of automatic prejudice. Here, the defendant has not pointed out any particular prejudice. He speculates that the jury may have looked up words which are legal terms of art in the instructions and applied the wrong information from the dictionary term. However, there has been no showing as in *Pankey* that the conduct by the trial court either coerced the jurors into reaching a verdict or misinformed them on essential elements of the case. We therefore decline to reverse on this basis.

■■ Alternatively, the defendant argues that since he had no prior convictions and the instant offenses were not crimes of violence the

sentence imposed upon him was excessive and an abuse of discretion. Without so deciding, we conclude that the defendant is entitled to a new sentencing hearing based on the fact that we have reversed the convictions on counts 1, 3 and 7.

The convictions as to counts 1, 3 and 7 are reversed; the convictions on counts 2, 4, 6, 8, 9, 11 and 12 are affirmed. The conviction on count 10, which both sides have agreed was erroneously entered, with this fact being apparent from the record, is vacated. The cause is remanded to the trial court with directions to conduct a new sentencing hearing in accordance with this opinion.

Affirmed in part, vacated in part, reversed in part and remanded.

WOODWARD and NASH, JJ., concur.