THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT SANDERS, Defendant-Appellant.

First District (5th Division)   No. 80—2829

Opinion filed September 14, 1984.

Steven Clark, of State Appellate Defender's Office, of Chicago (Daniel D. Maynard and Laura N. Jasinsky, both of Winston & Strawn, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Mark R. Fuller, Assistant State's Attorneys, of coun-

sel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of murder and armed robbery, and was sentenced to concurrent terms of 50 and 30 years' imprisonment. We reversed and remanded the judgments, finding plain error in the admission of certain statements (*People v. Sanders* (1982), 111 Ill. App. 3d 1, 443 N.E.2d 687), but the supreme court reversed our decision, holding that the plain error doctrine did not apply. (*People v. Sanders* (1983), 99 Ill. 2d 262, 273-74, 457 N.E.2d 1241.) Because our disposition did not reach all of the issues presented by defendant, the supreme court remanded with directions to consider those issues. Accordingly, we now address defendant's contentions that: (1) the trial court failed to clarify questions from the jury and failed to supply a transcript requested by the jury; (2) the trial court failed to instruct the jury concerning lesser included offenses and circumstantial evidence; (3) defendant was not proved guilty beyond a reasonable doubt; (4) the prosecutor's closing argument denied him a fair trial; and (5) the State violated his right to effective assistance of counsel by investigating the public defenders assigned to his case, and causing them to withdraw. Because the facts are set forth at length in our previous opinion, we forego repetition and discuss the facts only in the context of the remaining issues.

OPINION

Initially, we consider defendant's contention that the trial court erred in its response to a question submitted to the court by the jury during its deliberations at the close of trial. The jury posed the following question in writing to the trial court:

> "Ruling—if found guilty on one charge, is he, automatically, found guilty on the other charge? In other words, guilty on one and not guilty on the other?"

In response to this question, the court wrote:

> "In answer to your question, you have two forms of verdict, 'Guilty' and 'Not Guilty' for each of the two charges. *You must select one of the two forms of verdict for each of the two charges.*" (Emphasis added.)

Defendant contends that the trial court's answer was unresponsive because it "incorporated the general language of 'you have two forms of verdict' " which, defendant argues, is tantamount to no response at all. We disagree.

Where the jury raises an explicit question on a point of law arising from facts over which there is doubt or confusion, the court should attempt to clarify the issue in the minds of the jury members. (*People v. Morris* (1980), 81 Ill. App. 3d 288, 290, 401 N.E.2d 284.) "This is true even though the jury was initially given proper instructions." *People v. Morris* (1980), 81 Ill. App. 3d 288, 290-91, 401 N.E.2d 284; *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 491, 405 N.E.2d 844.

■ In the pending case, instructions were given to the jury in the exact form of Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 7.01, 14.01 and 14.02 (2d ed. 1981), which represent the definition of murder, the definition of armed robbery, and the elements of armed robbery, respectively. The trial court also submitted four verdict forms to the jury: (1) guilty of armed robbery; (2) not guilty of armed robbery; (3) guilty of murder; and (4) not guilty of murder. Having so instructed the jury, the court's subsequent admonition that the jurors "must select *one* of the two forms of verdict *for each of the two charges*" was, in our view, a direct and unambiguous response to the question presented, indicating that the jury should choose the appropriate form for the charge independently of the form chosen for the other charge. This information, taken as a whole, would sufficiently dispel any confusion the jury had about whether defendant could be "guilty on one [charge] and not guilty on the other."

Moreover, we note that defendant did not object to the trial court's written response to the jury's question but in fact *agreed* that the response was proper. The pertinent colloquy before the trial court was as follows:

"The Court: Back on the record. I have discussed with the lawyers, in front of Mr. Sanders, the alternative responses that might be given to this particular question. I have decided, *with no objections from either side*, to give the following answer ***. Is that agreeable to both sides?

[The State]: Yes, your Honor.

Defense Counsel: Yes, Sir." (Emphasis added.)

We finally note that defendant failed to preserve his argument on this issue in his motion for a new trial, which omission serves as a waiver on appeal. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77.) For these reasons, defendant's contention will be rejected.

■ Defendant further assigns error to the trial court's decision to deny the jury's written request to view, during deliberations, the

transcript of the "first [trial] testimony" of defendant's wife, Beverly Sanders. Again, we cannot agree.

The allowance or refusal of a request by the jury for a transcript of testimony in connection with its deliberations is within the sound discretion of the trial court. (*People v. Pierce* (1974), 56 Ill. 2d 361, 363-64, 308 N.E.2d 577.) A request of this type may not be summarily rejected, however. In the exercise of its discretion, the trial court is charged with determining whether a review of testimony would be helpful or harmful to the jury's deliberations. (*People v. Bibbs* (1981), 101 Ill. App. 3d 892, 898, 428 N.E.2d 965; *People v. Singletary* (1979), 73 Ill. App. 3d 239, 254, 391 N.E.2d 40.) A plausible starting point for this inquiry is whether the jury thinks that the testimony would be helpful and whether there is a possible basis for the jury's belief. *People v. Bibbs* (1981), 101 Ill. App. 3d 892, 898, 428 N.E.2d 965.

In the pending case, we believe that the trial court properly exercised its discretion in denying the jury's request. We particularly note the court's discussion of this issue wherein the court fully explained the reason for its decision:

> "The parties have discussed this, and I have reviewed it. The relevant consideration, among other things, the nature and complexity of the trial itself, the issues involved, the testimony of the particular witness in question, the time that the jury has been deliberating so far, and other factors that I think relate to this, and although I think I have discretion to grant the request, in my judgment, the jury has only been deliberating *** a little more than three and a half hours ***. The witness, Beverly Sanders, testified just yesterday. There wasn't anything particularly complex about the trial, itself, nor about the testimony given by Beverly Sanders; and the danger that I see, of course, in providing a jury with a transcript of one witness' testimony, particularly one portion of the witness' testimony, is that they would attach undue influence to that as distinguished from other evidence."

We agree with the trial court's rationale. The jury had deliberated for only a short while, the trial was not complex, and, as the trial court acknowledged, it was quite possible that the jury would take Mrs. Sanders' testimony completely out of context to resolve an unknown question.

Moreover, the record shows that defendant not only failed to object to the trial court's refusal to grant the jury's request, *he recommended that the court exercise its discretion in the very manner it*

*did,* believing, reasonably, we conclude, that the denial of such request was protective of and favorable to defendant's interests. Based on these facts, we find that defendant's argument on this issue is without merit.

■ Defendant next argues that the trial court erroneously failed to instruct the jury as to lesser offenses (receiving stolen property, robbery, burglary, voluntary manslaughter, involuntary manslaughter, reckless homicide and battery) and as to circumstantial evidence. Defendant concedes that he did not request an instruction for any of these offenses but contends that "fundamental fairness" demands that his failure to do so does not waive his right to raise this issue on appeal. The trial judge is under no duty to give unrequested instructions, and defendant's failure to request an instruction normally constitutes a waiver. (See *People v. Nutall* (1980), 91 Ill. App. 3d 758, 765-66.) We interpret defendant's argument on this point to be, in essence, a request under the plain error doctrine. We decline to honor this request.

The plain error doctrine provides an exception to the waiver rule where plain errors or defects affect substantial rights. It is a limited exception and should only be invoked where the evidence is so closely balanced that the verdict of the jury may have resulted from the error, or where the error itself was so egregious as to deny the defendant a fair trial. (*People v. Thomas* (1984), 121 Ill. App. 3d 883, 891.) In the case at bar, the evidence was not closely balanced on the question of guilt (*People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241 (law of the case)), and as we will explain, the trial court's failure to give the instructions at issue was not error, egregious or otherwise. Our supreme court recognized in *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266, that although the failure of the trial court to instruct the jury as to lesser included offenses where defendant requests no such instruction is frequently treated under the waiver rule, such failure does not constitute error at all. The court there noted that the absence of instructions concerning lesser included offenses may well work to the benefit of the accused, and so a defendant cannot complain of error where no such instruction was requested. (36 Ill. 2d 483, 490-91, 224 N.E.2d 266.) Further, we believe that the instructions now suggested by defendant would have been inappropriate.

A burglary instruction need not have been given in this case because that offense is not a lesser included offense of armed robbery. As far as the offense of receiving stolen property is concerned, that offense involves property that is first stolen by a third party (see Ill.

Rev. Stat. 1981, ch. 38, par. 16—1(d)), but no evidence here indicated a third-party theft; rather, the evidence indicated defendant's direct involvement in the theft.

The trial evidence also would not support a simple robbery instruction because a dangerous weapon (a brick) was forcefully used to strike the victim and render him unconscious. Such an act satisfies the requirements of armed robbery according to the law of this State. (See Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a), which provides that "A person commits armed robbery when he or she *** [takes property from the person or presence of another by the use of force or by threatening the imminent use of force] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon.") A simple robbery instruction was therefore unwarranted.

Defendant's argument that the trial court erred in failing to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter are likewise without merit. A manslaughter instruction must be given if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter. (*People v. Reyes* (1981), 102 Ill. App. 3d 820, 833, 429 N.E.2d 1277.) Voluntary manslaughter is defined as an unjustified killing committed while under sudden and intense passion resulting from serious provocation. Serious provocation, in turn, is conduct sufficient to excite an intense passion in a reasonable person. (*People v. Reyes* (1981), 102 Ill. App. 3d 820, 833, 429 N.E.2d 1277; Ill. Rev. Stat. 1981, ch. 38, par. 9—2(a).) Involuntary manslaughter, on the other hand, is the unlawful, unintentional killing of an individual when the lawful or unlawful acts which cause the death are performed recklessly and are acts that are likely to cause death or great bodily harm. Ill. Rev. Stat. 1981, ch. 38, par. 9—3.

In the instant case, there was no evidence to suggest that defendant was seriously provoked such that a sudden, intense passion caused defendant to kill the victim, nor was there evidence to suggest that the victim's strangulation was an unintentional or reckless act. In the absence of any evidence suggesting otherwise, the trial court's failure to give these two instructions was not an abuse of discretion.

A reckless homicide instruction would have been improper, because the commission of that offense involves driving a motor vehicle. Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).

Defendant argues further that an instruction for battery or aggravated battery was warranted because the evidence indicated that

none of the blunt trauma injuries were sufficient to induce the victim's death and that the victim died as a result of ligature strangulation.

Battery and aggravated battery may be included offenses of murder, but in order to give an instruction on either of these offenses, the evidence must permit a finding of not guilty of murder and guilty of the included offense. (*People v. Balls* (1981), 95 Ill. App. 3d 70, 74-75, 419 N.E.2d 571.) In our judgment, the evidence would not permit such a finding. The evidence leaves no doubt that a dangerous weapon was used; hence, the battery was at least aggravated battery. (See Ill. Rev. Stat. 1981, ch. 38, pars. 12—3 and 12—4.) Because aggravated battery is a forcible felony, and because the victim died as a result, defendant was guilty of at least felony murder. (See Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a).) For these reasons, the trial court's failure to give these instructions will not be disturbed.

■ Defendant next assigns error to the trial court's instruction to the jury on circumstantial evidence, which instruction consisted of the first but not the second paragraph of IPI Criminal No. 3.02 (2d ed. 1981), which provides:

"[1] Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [(the) (a)] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

■ You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

Defendant contends that had the second paragraph been given, the jury would have been informed that a conviction could not be founded on all or largely all circumstantial evidence unless defendant's guilt was so thoroughly established as to exclude every reasonable inference or hypothesis of innocence.

The second paragraph of IPI Criminal No. 3.02 should be given only when the proof of guilt is *entirely* circumstantial. (See *People v. Garcia* (1981), 95 Ill. App. 3d 792, 799, 420 N.E.2d 482, and authority cited therein.) In the pending matter, however, defendant admitted to his wife during a conversation in the presence of their children that he had participated in the murder and robbery. Defendant's wife testified in this regard as follows:

"Q. Now, could you tell the ladies and gentlemen of the

jury who was present during this conversation between your husband and yourself?

A. My son, Robert, my son, Albert and my son, William.

Q. Now, would you tell the jury, please, what if anything, was said between yourselves at this time?

A. My husband told me that he had robbed [the victim].

Q. Did he tell you who robbed [the victim].

A. He told me him and Greek went to the man's house. He told me he told Greek to throw a coat over the man's head and hit him in the head with a brick and he said the man fell and they took the things and then he went downstairs in the back and Greek threw the clothes out the window to him."

An admission constitutes *direct* evidence and obviates the need for the trial court to give the second paragraph of IPI Criminal No. 3.02 (see *People v. Ross* (1980), 89 Ill. App. 3d 128, 134, 411 N.E.2d 1187; *People v. Fletcher* (1978), 59 Ill. App. 3d 310, 322-23, 375 N.E.2d 1333 (in the context of IPI Criminal No. 3.02, an admission of guilt by a defendant is *direct* evidence of his connection with the crime).) Because defendant admitted his guilt in a communication which was properly admitted into evidence before the trier of fact, we find that the court's decision not to include the second paragraph of IPI Criminal No. 3.02 was proper.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt because there was no direct evidence that he committed or was accountable for the murder. Again, we cannot agree.

The evidence from which the jury could conclude that defendant had committed the murder was, first, the testimony of George Robinson, who knew the victim and was with him until 8 p.m. on the night of the incident. Robinson testified that at approximately 2 a.m., as he was returning from the store to the hotel where the victim lived, he saw defendant, whom he had previously seen on a number of occasions in the hotel, climb over the fence at the rear of the hotel after throwing clothing over the fence. Roy Gibson, a handyman at the hotel, also testified that clothing was discovered on the ground beneath a bathroom window at the hotel. Additional testimony by an evidence technician revealed that a brick, a broken bottle and broken glass were found next to the victim's body, and a microanalyst stated that type B blood, the same type as the victim's but not defendant, was found on the outside of defendant's pants.

The most damaging testimony and direct evidence of defendant's

guilt came from defendant's wife, who stated that defendant admitted to her that he had participated in the murder. Mrs. Sanders also identified a blood-stained trench coat that was found beneath a window at the hotel as the coat that defendant wore on the night of the incident. Further, Louise Drake, who shared a hotel room with the victim, identified the victim's watch, ring, and clothes which defendant had previously given to his wife.

Based on the foregoing testimony, we do not believe that the evidence was so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to defendant's guilt. See *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331.

■ Defendant contends further that the prosecutor improperly commented during closing argument that the victim's apartment had been "wiped clean of fingerprints," which statement, defendant argues, was contrary to the evidence adduced at trial. We disagree.

We first point out that the record shows that under direct examination James Dunbar, an evidence technician from the Chicago Police Department, testified as follows:

"Q. What was the first thing that you did in terms of processing the scene?

A. I first photographed the scene.

\* \* \*

Q. Would you describe that search for physical evidence to the ladies and gentlemen of the jury?

A. The house brick \*\*\* some glass fragments \*\*\* and a sample of blood that was on the floor next to the victim. I also examined for ridge impressions on the broken glass, broken bottle and a glass jar that was on the scene.

\* \* \*

Q. Did you process certain areas of the crime scene for such ridge impressions or fingerprints?

A. Yes, I did.

Q. Did you find any fingerprints at all?

A. No, Sir.

Q. Sir, at the time were you aware of the fact that the body of the victim lived in that apartment, as you processed the scene?

A. Yes, Sir.

Q. But you could not even find his fingerprints *in that apartment*?

A. No, Sir." (Emphasis added.)

Under further re-cross-examination, Dunbar testified:

"Q. What did you process for fingerprints?

\* \* \*

A. Broken glass, glass bottle and the glass jar.

Q. That is it?

A. These are the items I recall.

Q. That was your processing of that crime scene for fingerprints?

A. Yes, Sir."

Based on the foregoing testimony, we cannot agree that the prosecutor's statement that the area had been "wiped clean" was prejudicial. Rather, in our view, that statement was a reasonable inference from the evidence, given the fact that Dunbar had also testified that a fingerprint could remain on an object for years unless it was wiped clean and that the crime scene was examined for fingerprints (which "scene" Dunbar stated consisted of the victim's apartment; three "items" were in turn "processed" for fingerprints but none were found).

We further observe that the preceding testimony is clearly distinguishable from that in *People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280, cited by defendant on this issue, in that in *Beier* the defendant, who was charged with murdering her husband, did *not* admit that she had committed the murder and there was *no* testimony as to the presence or absence of fingerprints on the murder weapon. The court thus held that it was reversible error for the prosecutor to argue to the jury that no fingerprints were found and that the defendant had wiped off the murder weapon.

In the pending case, however, defendant admitted that he was involved in the murder scheme and, as previously explained, there was testimony that no fingerprints were found on the items examined. Also, defendant failed to object to any of the prosecutor's statements he now contends were improperly admitted; on at least two occasions during closing argument and once during jury instructions, the trial court admonished the jury that it should not regard closing argument as evidence, and defendant *responded to the prosecutor's statements* by stating during *his* closing argument that the dresser drawers, closet door, kitchen doorknob, a chair and a padlock had not been dusted for fingerprints. Based on the record as a whole, therefore, coupled with the weight of the evidence which established defendant's guilt beyond a reasonable doubt, we cannot say that the prosecutor's statements resulted in a substantial undue prejudice to defendant (see *People v. Baptist* (1979), 76 Ill. 2d 19, 28-29, 389 N.E.2d 1200) or that they were such a material factor in

defendant's conviction that the jury would likely have reached a contrary verdict had they not been made. *People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68.

■■ ■ Defendant's final argument is that his right to effective assistance of counsel was denied. The record shows that on the day before defendant's trial was to begin, defendant's attorneys (assistant public defenders) were informed for the first time that the special prosecutions bureau of the State's Attorney's office was considering filing charges against them for obstruction of justice because certain witnesses had alleged that the attorneys had offered them a bribe for an undisclosed reason.

The trial court and attorneys for both sides had a lengthy discussion concerning this issue, the court deciding that it would issue a final decision on June 6, 1980. The record is devoid of the June 6 proceedings, however. On June 23, 1980, a private attorney filed his appearance on behalf of defendant, and when the court reconvened on July 21, 1980, that attorney had replaced the public defender as defendant's counsel. The new attorney represented defendant throughout the trial of this matter, which commenced on September 25, 1980.

Defendant contends that the abrupt substitution of attorneys denied his sixth amendment right to effective assistance of counsel because his "new" attorney was "probably" not as capable and experienced as the public defenders who were members of the murder task force unit of the Cook County Public Defenders Homicide Task Force. Also, "if this type of conduct" by the State's Attorney's office is permitted, defendant argues, it will have a chilling effect on an attorney's incentive to vigorously investigate and interview witnesses for his client, and it would threaten important values in the adversary system. The State's Attorney's office would then be permitted to conduct a grand jury investigation as a means of eliminating defense counsel on the day of a trial when there is no evidence to indicate or warrant the investigation. Defendant further contends that his "new" attorney committed a number of trial errors.

The United States Supreme Court recently considered the constitutional standard for effective assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Although our supreme court has not yet embraced *Strickland*, Illinois has generally followed the pronouncements of the United States Supreme Court on this subject. (See *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217, and cases cited hereinafter.) In *Strickland*, the Supreme Court held that in order to sustain a charge of

ineffective assistance of counsel, a convicted defendant must show that his attorney's performance was deficient and that the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. (*Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; accord, *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.) It is elementary that the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066, accord, *People v. Dudley* (1970), 46 Ill. 2d 305, 308-09, 263 N.E.2d 1, *cert. denied* (1971), 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386.

With these standards as our guide, we must conclude that defendant has failed to make a showing of ineffectiveness of counsel. Defendant alleges that his new attorney failed to "pressure" the trial court to rule on his motion *in limine* to preclude Mrs. Sanders' testimony. In light of our supreme court's conclusion that the substance of Mrs. Sanders' testimony was admissible, we cannot agree with defendant that he was unduly prejudiced thereby. Beyond this, defendant relies on his statement of issues as presented in his brief. (*E.g.,* "As demonstrated by this brief, [defense counsel] made numerous errors in his representation of Mr. Sanders.")

Because defendant's arguments are broadly generalized, we believe that his contention on this issue fails to satisfy the requirements previously set forth. As a reviewing court, we must judge the reasonableness of counsel's challenged conduct, but the defendant must first identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066.

We also disagree with defendant's contentions that the State maliciously "waited" until the day before trial to inform the public defenders of the impending charges against them. The record shows that approximately one week prior to trial, the trial court conducted a hearing on the State's motion to extend defendant's term for 60 days because Mrs. Sanders had not yet been found. An investigator, Barry Jackson, testified that although he had informed Mrs. Sanders in November 1979 that defendant's case would be coming up for trial and that she would have to appear in court, he had not been able to contact her after that date, and since March 17, 1980, Jackson had attempted to serve a subpoena on her but she could not be found. He further testified in response to a question from the trial

court that he could reasonably say that if he were granted 30 additional days, he "would be able to come [into court] with Beverly Sanders." Apparently, Mrs. Sanders *was* located and on June 4, the day before trial, the State informed the court of the possible criminal charges against the public defenders handling this case.

During cross-examination at trial, Mrs. Sanders explained that the reason she had avoided Mr. Jackson was because defendant's attorneys had advised her to do so, to feign amnesia and alcoholism and to not remember anything about the incident if she was called to testify at trial. She also testified that on June 2, 1980, two days before trial, she asked defendant's attorneys for a job but she was not given one and that shortly thereafter she contacted the State's Attorney's office, which placed her and her children in a motel. On approximately June 6, 1980, Mrs. Sanders testified before a grand jury as to the alleged misconduct of the assistant public defenders, but no indictment was returned.

Contrary to defendant's argument, our review of the record indicates that the State had good reason to believe that the charges should be filed and that it did not maliciously wait until the last minute to inform the defense attorneys of its plans. It appears that it was only after Mrs. Sanders was finally located that the State informed defense counsel of its investigation. It is therefore quite plausible that it was not until that time that the State obtained sufficient incriminating evidence to disclose the investigation; earlier disclosure might have unnecessarily and unfairly alarmed those involved.

Based on the above, we cannot say that the State acted improperly. Moreover, the record is devoid of any motion or request by defendant's trial counsel which stated that he needed additional time to prepare.

Thus, because we find that the trial court did not err with respect to any of the foregoing issues, its judgment will be affirmed.

Affirmed.

MEJDA, P.J., and PINCHAM, J., concur.