THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUSTAVO SANCHEZ, Defendant-Appellant.

First District (2nd Division)   No. 1—07—1855

Opinion filed March 3, 2009.

468

Patricia Unsinn and Suzan-Amanda Ingram, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Ashley Romito, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

Omar Madrid was arrested on January 20, 2004, for possession of a controlled substance. While in custody, he spoke with Investigator Anthony Aguirre (Tony) of the Cook County sheriff's department and agreed to become a confidential informant. In exchange for Madrid's help, the charges against him were dismissed.

After agreeing to supply cocaine and participating in the delivery of the cocaine to Madrid's friend Tony, defendant Gustavo Sanchez was indicted for possession of a controlled substance with intent to deliver more than 900 grams of cocaine (720 ILCS 570/401(a)(2)(D) (West 2004)). Following a jury trial, defendant was convicted and sentenced to 16 years' imprisonment.

On appeal defendant argues: (1) the State violated Supreme Court Rule 412(a)(ii) (188 Ill. 2d R. 412(a)(ii)) when it failed to disclose the substance of a statement defendant made to Madrid; (2) the trial court erred when it failed to provide the jury with definitions of the terms "incite," "induce" and "predispose," in response to the jury's question; and (3) defense counsel was ineffective for failing to object to the court's response to the jury's question. For the following reasons, we affirm the judgment of the trial court.

## BACKGROUND

Prior to trial, defendant filed a motion to disclose the identity of any and all informants who assisted the police in this case. Defendant asserted that he was planning on utilizing an entrapment defense. In an affidavit filed in support of his motion, defendant alleged that he believed Madrid, an acquaintance and coworker, was acting as a confidential informant. Defendant stated that Madrid repeatedly asked him to obtain a kilogram of cocaine for a friend of his friend. Defendant told Madrid that he "knew someone who dealt cocaine" but that he did not wish to get involved. After a hearing on the motion, the trial court ordered the State to give defendant any police reports pertaining to Madrid's involvement as a police informant, to disclose to defendant whether Madrid had been compensated for his services, and to produce Madrid so that the defendant could interview him. Defendant interviewed Madrid on November 13, 2005, and according to defendant, Madrid refused to answer defense counsel's questions. In addition, the police reports tendered made no reference to any statements defendant made to Madrid.

At trial, on direct examination, Madrid testified that the day after his case was dismissed he went to work at Carlisle Carpets, where he spoke with defendant about obtaining a kilo of cocaine for a friend of a

friend named Tony. According to Madrid, defendant had previously told him that "he knew people who had drugs and could get whatever [Madrid] needed." Defense counsel objected to this line of questioning because the State failed to produce or tender any statements allegedly made by defendant to Madrid. Despite the State's admission that Madrid was testifying to a statement made by defendant, the court overruled the objection.

Madrid testified that defendant told him that he would get back to him. A few days later, Madrid called defendant and defendant again told Madrid that he was looking into his request. Madrid then gave defendant "Tony's" phone number so that defendant could deal with him directly. Subsequently, Madrid spoke with defendant several times to check on the status of the deal. This ended Madrid's involvement in the narcotics transaction.

Investigator Aguirre received a phone call on January 27, 2004, from defendant, who stated that he had gotten the phone number from Madrid. Defendant asked "Tony" if he was looking for "work," meaning drugs. Tony told defendant that he was looking for cocaine and defendant informed him that a kilo of cocaine would cost "20 stacks," meaning $20,000. Defendant told Tony that he would bring him a sample of the cocaine the next day.

Defendant phoned Tony three days later and told him that he had a sample of the cocaine. The men agreed to meet at defendant's workplace. After coordinating surveillance for the meeting, Tony arrived at the agreed-upon location. Defendant got into Tony's car and handed him a small bag of white powder, which later tested positive for cocaine. Tony asked defendant for a larger sample because the sample he had been given was too small to test for purity. Defendant made a phone call and Tony heard defendant say "his guy wanted a bigger sample." Defendant told Tony that he would call when he had a larger sample and exited Tony's car.

Defendant called Tony later that day and told him that "his guy Andy" was ready to go through with the deal. Defendant sounded disappointed when Tony told him the deal would have to wait a few days. Tony then received a call from Andres Aguirre,[1] who asked Tony why they could not do the deal that day. Tony told Andres that he was watching his kids over the weekend and was not available until Monday.

On Monday, defendant called Tony and said that "Andy" was ready to deal. They agreed to meet in a mall parking lot at 3 p.m.

---

[1]Andres Aguirre is not related to Investigator Anthony Aguirre. Andres Aguirre is not a party to this appeal.

Tony arranged for surveillance. At about 2:23 p.m., Tony received a call from Andres Aguirre, who was confirming their meeting time and location. Shortly after Tony arrived at the meeting place, defendant arrived with a little girl. Defendant waved across the parking lot and Andres came over. Defendant and Andres got into Tony's car and Andres made a phone call. Andres then left to pick up the kilo of cocaine.

Andres was followed by Drug Enforcement Administration (DEA) Special Agent Jeff Hoyt and Investigator Majcher to a home nearby. About five minutes, later Andres drove away.

When Andres arrived back at the parking lot about 4:30 p.m., defendant and Tony got into Andres' van. Andres pulled out a large Ziploc bag containing an off-white chunky substance from the overhead compartment. Andres handed the bag to Tony and Tony inspected it. Tony then handed the bag back to Andres, who replaced the bag in the overhead compartment. Tony then said that he needed to call the guy with the money so the three got out of the van. Once outside, Tony activated the arrest signal and both defendant and Andres were arrested at the scene. The cocaine was recovered from the overhead compartment of Andres' van. It was inventoried and later submitted for lab testing. Tests confirmed that the bag contained an estimated weight of 968.1 grams of cocaine.

Following his arrest defendant was "Mirandized." Defendant waived his rights and gave a handwritten statement. Defendant's statement of the events essentially coincided with the testimony of Madrid and Investigator Aguirre. However, in his statement, defendant stated that when Madrid asked him to obtain cocaine for a friend, defendant told him "yeah, I could probably come up with it." When he eventually contacted his drug supplier to obtain the cocaine, the drug supplier told him that a kilo of cocaine would cost $19,000.

Defendant also testified in his defense. He acknowledged his participation in the undercover drug transaction but stated that he was entrapped. Again, his version of the events substantially coincided with Investigator Aguirre's and Madrid's testimony. Defendant testified that he and Madrid were friends, and although he knew people who dealt cocaine, he never participated in any drug transactions with Madrid. Defendant also testified that he had "occasionally" mentioned to Madrid that he knew someone who dealt cocaine and admitted that he told Madrid that he could get cocaine if Madrid needed it. When Madrid asked him to get cocaine for him on January 20, 2004, he told Madrid that he did not want to get involved. Madrid asked him about the cocaine every day for a week, so defendant eventually agreed to do Madrid a "favor" to get Madrid to stop "nagging" him.

Defendant also testified that he thought he was only going to

introduce Tony to Andres when they met to give Tony the sample, and leave. When he asked Tony if he could leave, Tony told him that the deal would not go through if he left. He had never sold narcotics before and never touched the drugs in question. He also denied previously bragging to Madrid that he could get "really cheap narcotics."

At the jury instructions conference, the State submitted the Illinois Pattern Jury Instructions, Criminal, No. 24—25.04 (4th ed. 2000) (hereinafter IPI Criminal 4th) for entrapment. Defense counsel objected and offered a model instruction on entrapment from the Ninth Circuit Court of Appeals. The trial court denied the defendant's instruction and gave IPI Criminal 4th No. 24—25.04.

During deliberation, the jury sent a note asking the court for clarification of the terms "incite," "induce" and "predispose." The trial court consulted with defense counsel and the State as to how they would like the court to respond. Defense counsel suggested that the jury be instructed that it had received all of the instructions and to keep deliberating. The State agreed, noting that IPI Criminal 4th No. 24—25.04 had no definitions for the terms. The trial court sent a note to the jury stating, "you have received all of the instructions. Please continue to deliberate."

After hearing all of the evidence, the jury found defendant guilty of possession of a controlled substance with the intent to deliver. After hearing aggravation and mitigation, the trial court sentenced defendant to 16 years' imprisonment.

## ANALYSIS

Defendant first claims that the State violated Supreme Court Rule 412(a)(ii) when it failed to disclose the substance of defendant's alleged statement to Madrid prior to trial. Specifically, defendant contends that the State's failure to disclose that defendant allegedly told Madrid that he "knew people who had drugs and could get whatever" seriously prejudiced defendant, where this was the only evidence to establish that defendant was predisposed to commit a drug offense. As a result, defendant claims that he is entitled to a new trial.

The State does not contest that it failed to tender defendant's statement to Madrid to the defense prior to trial, thereby failing to comply with Rule 412(a)(ii). Instead, the State argues that notwithstanding this failure, a new trial is not warranted where defendant suffered no prejudice. The State claims that although defendant was not formally tendered this statement prior to trial, defendant cannot claim surprise or inability to present a defense where defendant admittedly made similar statements. In addition, the State argues that its failure to formally tender the statement is irrelevant because there

was other evidence to support defendant's predisposition to committing the crime.

■ Rule 412(a)(ii) states in relevant part:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

\*\*\*

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements[.]" 188 Ill. 2d R. 412(a)(ii).

The purpose of Rule 412(a)(ii) is to protect a defendant against surprise, unfairness, and inadequate preparation and to afford the defense an opportunity to investigate circumstances surrounding the statement. *People v. McInnis*, 88 Ill. App. 3d 555 (1980); *People v. Weaver*, 92 Ill. 2d 545, 558 (1982). All statements made by a defendant that might have a bearing on the defendant's guilt or innocence fall under Rule 412(a)(ii). *Weaver*, 92 Ill. 2d at 558.

Failure to comply with discovery requirements does not necessitate a new trial in all instances. *People v. Sims*, 245 Ill. App. 3d 221 (1993). There are numerous sanctions available under Supreme Court Rule 415(g) to be levied against a party that has failed to comply with discovery rules, including the granting of a new trial. 134 Ill. 2d R. 415(g). However, a court of review will find an abuse of discretion and impose an appropriate sanction only when a defendant is prejudiced by the discovery violation and where the trial court fails to eliminate the prejudice. *Weaver*, 92 Ill. 2d at 559.

■ The factors we must consider to determine whether defendant suffered prejudice and a new trial must be granted as a result of the State's Rule 412(a)(ii) violation include: (1) the closeness of the evidence; (2) the strength of the undisclosed evidence; (3) the likelihood that prior notice could have helped the defense discredit the evidence; and (4) the willfulness of the State in failing to disclose the evidence. *Weaver*, 92 Ill. 2d at 559.

To sustain a charge of possession of a controlled substance with intent to deliver, the State must prove that "the defendant had knowledge of the presence of the narcotics, the narcotics were in the immediate possession or control of the defendant, and \*\*\* the defendant intended to deliver the narcotics." *People v. Robinson*, 167 Ill. 2d 397, 407 (1995), citing 720 ILCS 570/401 (West 1992).

■ In this case, defendant raised the defense of entrapment.

Entrapment is a statutory defense and is outlined in section 7—12 of the Criminal Code of 1961:

"A person is not guilty of an offense if his or her conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of that person. However, this Section is inapplicable if the person was predisposed to commit the offense and the public officer or employee, or agent of either, merely affords to that person the opportunity or facility for committing an offense." 720 ILCS 5/7—12 (West 2004).

Because he raised the defense of entrapment, defendant necessarily admitted that he committed the crime of possession of a controlled substance with intent to deliver, albeit because of "improper governmental inducement." *People v. Rivas*, 302 Ill. App. 3d 421, 432 (1998). An entrapment defense requires that the defendant show that the State improperly induced him and that he was not otherwise predisposed to commit the crime. *People v. Glenn*, 363 Ill. App. 3d 170, 173 (2006). Once a defendant presents evidence of entrapment, however slight, the State bears the burden to rebut the entrapment defense beyond a reasonable doubt. *Rivas*, 302 Ill. App. 3d at 432-33.

Defendant argues that the evidence of his predisposition to commit a drug offense was close, the strength of the undisclosed statement "cannot be overstated," he would have opted for a different trial strategy and the State willfully failed to disclose the statement.

■ Predisposition is established by proof that the defendant was willing and able to commit the offense without persuasion before his initial exposure to government agents. *People v. Criss*, 307 Ill. App. 3d 888, 897 (1999). In assessing predisposition in drug cases, we look at the following factors: "(1) the defendant's initial reluctance or willingness to commit the crime; (2) the defendant's familiarity with drugs; (3) the defendant's willingness to accommodate the needs of drug users; (4) the defendant's willingness to profit from the offense; (5) the defendant's current or prior drug use; (6) the defendant's participation in cutting or testing the drugs; and (7) the defendant's ready access to a supply of drugs." *Glenn*, 363 Ill. App. 3d at 173.

These factors weigh against defendant. Defendant testified that he was initially reluctant to supply Madrid's friend Tony with drugs and it was only after Madrid repeatedly nagged that defendant agreed to assist him. However, defendant testified that he had "occasionally" told Madrid in the past that he knew people who sold cocaine and told Madrid that he could get cocaine if Madrid needed it. While defendant testified that he indicated to Madrid that he did not want to become involved in supplying cocaine to Madrid's friend, defendant called

Tony several times on the phone, met with him and provided him with a sample of the cocaine. Defendant also introduced Tony to Andres, his drug supplier, and was present for the actual transaction.

Defendant's familiarity with drugs is obvious. Although defendant testified that he had never engaged in any narcotics transactions prior to this one and had never been arrested for dealing drugs, he did admit that he knew people who sold cocaine and admitted that he had told Madrid on several previous occasions that he could get Madrid cocaine if he needed it. Furthermore, defendant asked Tony if he was looking for "work," a street name for cocaine, and eventually supplied Tony with a sample of the cocaine.

■ The question of whether defendant would profit from the transaction is not clearly answered. Defendant indicated that he would obtain the cocaine as a "favor" to Madrid. Nonetheless, defendant told Tony that a kilo of cocaine would cost $20,000, but in the statement he gave to police following his arrest, he indicated that his drug supplier told him that a kilo would cost $19,000. Based on the foregoing, it could be said that the evidence as to defendant's predisposition was not close.

Defendant also claims that the strength of the undisclosed evidence "cannot be overstated." Defendant argues that the only person who could provide evidence of his predisposition was Madrid. The State claims that Madrid's statement is merely cumulative, where defendant told police that he told Madrid that he could probably come up with a kilo of cocaine after Madrid asked him to "come up" with one. This statement was admitted into evidence at trial. In addition, defendant testified at trial that he "occasionally" told Madrid that he could get him cocaine if he needed it. Defendant also admitted in his motion to produce the identity of confidential informants that he believed Madrid was acting as an informant and that he had told Madrid that he knew someone who dealt cocaine.

At oral argument, defendant attempted to draw a distinction between the undisclosed statement and the statements made by defendant in his affidavit, his postarrest statement to police and his testimony at trial. Defendant claimed that his ability to obtain cocaine (the statements defendant included in his affidavit, in his postarrest statement to police and his testimony at trial) differs greatly from his willingness to obtain cocaine (the undisclosed statement). We find no such distinction here.

Admittedly, the undisclosed statement, that defendant "knew people who had drugs and could get whatever," goes directly to four crucial factors in determining predisposition: defendant's initial reluctance or willingness to commit the crime, defendant's familiarity

with drugs, defendant's willingness to accommodate the needs of drug users and defendant's ready access to a supply of drugs. However, we agree with the State that the undisclosed statement is merely cumulative given defendant's own admissions. The undisclosed statement, that defendant "knew people who had drugs and could get whatever [Madrid] wanted," is almost identical to the admissions defendant made in his written confession (that he "probably could" obtain a kilo of cocaine for Madrid's friend), his testimony at trial (that he had "occasionally" mentioned to Madrid that he could get cocaine if Madrid needed it) and in his motion to produce the identity of confidential informants (that he "knew someone who dealt cocaine"). Clearly defendant was aware of the statements he made regarding his ability and willingness to provide Madrid with cocaine. Consequently, we cannot say that had the State disclosed the statement defendant made to Madrid, the outcome would have been any different.

Defendant next claims that if he had the statement prior to trial, he would have taken steps to discredit the statement or alter his trial strategy. As previously discussed, the undisclosed statement was substantially similar to defendant's own postarrest statement, the admission in the affidavit and his trial testimony. It is unclear how the disclosure of defendant's statement to Madrid would have changed defendant's trial strategy. In addition, if Madrid's undisclosed statement was as much of a surprise as defendant claims, defense counsel could have asked the court for an opportunity to reinterview Madrid or for a recess. See *People v. DeBord*, 61 Ill. App. 3d 239, 241-42 (1978). Defense counsel did not do so.

Finally, defendant claims that the State willfully withheld defendant's statement to Madrid from defense counsel. Defendant asserts because the State was present during defense counsel's interview of Madrid, the State should have known that Madrid refused to answer any questions. The State argues that it did not formally tender Madrid's statement because defense counsel had an opportunity to interview Madrid prior to trial. Contrary to defendant's assertions, there is simply no evidence that the State willfully failed to disclose defendant's statement.

■ After considering the four *Weaver* factors, we find that while the State failed to disclose defendant's statement to Madrid in violation of Rule 412(a)(ii), defendant suffered no prejudice as a result. Clearly, the undisclosed statement was cumulative of defendant's other statements and testimony and was not the only evidence offered to support defendant's predisposition to commit a drug offense. Accordingly, we decline defendant's request for a new trial.

■ Defendant also contends that the trial court erred in failing to

provide clarification to the jury on the terms "incited," "induced" and "predisposed" after it requested such clarification. The State claims that defendant has waived this issue where defendant actively participated in discussions with the trial court and the State as to how to respond to the jury's request for clarification.

The record shows that not only did defense counsel participate in the discussion with the trial court and the State, but defense counsel stated that she would ask that the jurors be instructed that "[t]hey have received all of the instructions in this case. Keep deliberating." Indeed, where a defendant acquiesces in the trial court's answer to a jury's question, he cannot later complain that the trial court abused its discretion. *People v. Reid*, 136 Ill. 2d 27, 38 (1990). Consequently, defendant has waived this claim.

■ In the alternative, defendant claims that trial counsel was ineffective for acquiescing to the trial court's response to the jury's request for clarification. To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

Under the first prong of the *Strickland* test, defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that under the circumstances, the challenged action, 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 100 L. Ed. 83, 94, 76 S. Ct. 158, 164 (1955).

A defendant satisfies the second prong of *Strickland* if he can show that a reasonable probability exists that, had counsel not erred, the trier of fact would not have found him guilty beyond a reasonable doubt. *People v. Caballero*, 126 Ill. 2d 248, 260 (1989). Where the defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Flores*, 153 Ill. 2d 264, 284 (1992).

We cannot find that defendant was prejudiced by counsel's failure to ask that the trial court provide the jury with clarification of the words of "incite," "induce" and "predispose." When words in a jury

478

instruction have a commonly understood meaning, the court need not define them with additional instructions. *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002). This is especially true where the pattern jury instructions do not provide that an additional definition is necessary. *People v. Washington*, 184 Ill. App. 3d 703, 708 (1989). There is no indication that an additional definition or definitions are needed when IPI Criminal 4th No. 24—25.04, the definition of entrapment, is used. Consequently, we cannot say that counsel was ineffective for failing to request or offer clarification of these terms.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed.

HOFFMAN and CUNNINGHAM, JJ., concur.