# Illinois Official Reports

## Appellate Court

---

### *People v. Hicks*, 2015 IL App (1st) 120035

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL HICKS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-0035 |
| Filed<br>Rehearing denied | March 5, 2015<br>April 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-12655; the Hon. Thomas M. Davy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Adrienne N. River, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Andrea V. Salone, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.[*]<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

---

[*]This case was recently reassigned to Justice Ellis.

**OPINION**

¶ 1        Defendant Carl Hicks was charged with armed robbery for allegedly holding up a candy store. The State's witnesses testified that, during the robbery, he pointed a gun at the store's cashier and struggled with her over the money he took from the cash register. Defendant admitted that he took the money from the register but denied carrying a gun or touching the cashier.

¶ 2        Based upon his testimony, defendant requested that the jury be instructed on the lesser offense of theft, which the trial court allowed. The trial court also *sua sponte* instructed the jury on robbery, over defendant's objection. During its deliberations, the jury requested a legal definition of "force," an element of robbery. 720 ILCS 5/18-1(a) (West 2008). The trial court responded that there was no definition and that the jury should decide whether defendant used force based upon the facts of the case. Defendant's attorney agreed with the trial court's response. The jury convicted defendant of robbery.

¶ 3        Defendant appeals, raising three issues: (1) whether the State's evidence was insufficient to prove that he took the money by the use or threat of force; (2) whether the trial court erred in *sua sponte* instructing the jury as to the offense of robbery; and (3) whether his trial attorney provided ineffective assistance of counsel when he failed to tender a definition of "force" in response to the jury's question.

¶ 4        We conclude that the State's evidence was sufficient to prove that defendant committed robbery. The evidence at trial, viewed in the light most favorable to the State, showed that defendant grappled with the store's cashier when he took the money from the cash register and thus used "force" sufficient to convict him of the offense of robbery.

¶ 5        We also conclude that the trial court did not err in instructing the jury as to the lesser-included offense of robbery. The evidence at trial supported such an instruction, and the trial court cited the correct legal authority before delivering the instruction. The record shows no abuse of discretion.

¶ 6        Finally, we reject defendant's claim of ineffective assistance of counsel, because we find that defense counsel's failure to define force did not prejudice defendant. There is no pattern jury instruction defining "force," and no authority requires a trial court to define that term. Moreover, defendant cannot show that the definition of "force" would have likely changed the outcome of his trial where the State's evidence supported a finding that defendant used force. Therefore, defendant cannot show that there was a reasonable probability that the trial court would have accepted his definition of force, much less that this definition may have changed the outcome of his trial. We affirm defendant's conviction.

¶ 7                                  I. BACKGROUND
¶ 8                                  A. Trial Evidence
¶ 9        Selena Clark testified that, on June 23, 2008, she was working at her family's candy store located at 1158 West 87th Street in Chicago. Around 4 p.m., she noticed defendant enter the store. Defendant approached the counter and "mumbled something." Clark testified that defendant held a black revolver to her with his left hand and tried "to go in the register" with his right hand. He told her to give him the money in the register. She testified that, as defendant reached for the money, she grabbed his left wrist and was "fighting him off."

¶ 10        Clark testified that she screamed for her father, who was in the back office of the store. As her father ran out of the office, defendant "took off running out [of] the door" with some money from the register. After defendant fled, Clark noticed a cell phone on the floor in front of the counter. Clark testified that, after the struggle with defendant, her fingernails were broken and bleeding.

¶ 11        Willie Tate, Clark's father, testified that, when he ran out of the office, defendant was "reaching in the register and [Clark was] fighting him off." Tate said that defendant "reach[ed] at the register *** and [Clark] was hitting him." As Tate approached defendant, he saw that defendant had a revolver in his right hand. Clark fought with defendant for about 15 seconds, when defendant backed away and went out the door. Tate went around the counter to the lobby of the store, where he saw a cell phone on the floor. Tate testified that he called the police after defendant left.

¶ 12        Tate suffered from glaucoma, which affected his vision. Tate maintained that he could still see at the time of trial and that he saw much better in June 2008 than he did at the trial. At the time of the trial, Tate was in the custody of the Illinois Department of Corrections for a 2009 conviction for delivery of a controlled substance. He had been convicted of two other drug offenses in 2002 and 2004 and had a pending drug charge from 2011. Tate testified that he had not made any deals or agreements in exchange for his testimony.

¶ 13        Tate testified that, while he was in Cook County jail in February 2010, he saw defendant. Defendant asked Tate if he remembered him. Tate testified that, later that day, he saw defendant again in the Bridgeview courthouse lockup. Tate testified that defendant said he did not mean to harm Clark or Tate on June 23, 2008; that "[h]e just was high" and "needed a couple of more bucks to get him [*sic*] some more drugs." Tate said that defendant apologized to him. Tate testified that defendant said he did not mind if Tate testified "that he committed the robbery ***, but he asked [Tate] if [he] would just not mention *** the gun."

¶ 14        Officer Gabriel Campos of the Chicago police department testified that he responded to the scene of the robbery and spoke to Clark or Tate. He did not recall Clark being injured. Campos testified that he arrested defendant later that day. Clark and Tate identified defendant in a lineup at the police station.

¶ 15        The parties stipulated that the cell phone left at the store was registered to defendant. They also stipulated that an investigator from the Cook County State's Attorney's office would testify that he spoke to Tate prior to trial and that Tate told the investigator that, when he spoke to defendant in jail, defendant said he did not have a gun during the robbery.

¶ 16        Defendant testified that, as of June 23, 2008, he was addicted to drugs. On that date, he met a woman named Vanessa who said that she was also an addict. Defendant gave Vanessa his phone and asked if she could sell it so that defendant could use the money to buy drugs. Defendant testified that Vanessa took his phone into the candy store while defendant waited outside. Defendant testified that Vanessa finally left the store 45 minutes to an hour later. Defendant followed Vanessa to an alley, where she spit out a $10 bag of cocaine. Defendant testified that Vanessa said, "That's all he would give me."

¶ 17        Defendant testified that he took the bag of cocaine and returned to the store, hoping to get his phone back. When he entered, he approached Clark, who was standing behind the counter. Defendant saw his phone sitting on the counter. Defendant put the bag of cocaine on the counter and asked for his phone back. Defendant testified that Clark denied giving the cocaine to Vanessa or accepting defendant's phone.

¶ 18    Defendant testified that he reached for his phone but Clark grabbed it first. In response, defendant grabbed $40 out of the open cash register, put it in his pocket, and ran out of the store. Defendant denied having a gun with him that day. He also denied touching Clark or having a struggle with her.

¶ 19    Defendant admitted that he apologized to Tate while they were both in jail. Defendant said that he told Tate that he did not have a gun in the store. Defendant testified that he asked Tate "to not come into court and lie *** and say that [he] had a gun."

¶ 20                          B. Jury Instructions, Deliberations, and Verdict

¶ 21    During a break in the State's case-in-chief, the court and the parties had a preliminary discussion regarding jury instructions. Defense counsel requested an instruction on theft as a lesser-included offense of armed robbery. The State argued that theft was not a lesser-included offense of armed robbery. After hearing arguments from defense counsel and the State, the court elected to "wait and see if the defendant testified, and see what his testimony [was]" before deciding to give the instruction.

¶ 22    At the close of defendant's case, the parties held a hearing regarding the jury instructions. Defendant again requested an instruction for theft. The court said that it was "inclined" to instruct the jury as to armed robbery, robbery, and theft, noting, "Under People versus Garcia *** the Court may sua sponte give a lesser instruction." Defendant objected to instructing the jury on robbery. The trial court ultimately instructed the jury as to both theft and robbery.

¶ 23    The court defined robbery in accord with Illinois Pattern Jury Instructions, Criminal, No. 14.01 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 14.01): "A person commits the offense of robbery when he knowingly takes property from the person or presence of another by [the] use of force or threatening the imminent use of force." The court also instructed the jury as to the elements of robbery in accord with Illinois Pattern Jury Instructions, Criminal, No. 14.02 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 14.02):

> "To sustain the charge of robbery, the State must prove the following propositions.
>
> First proposition: That the defendant knowingly took property from the person or presence of Selena Clark.
>
> And second proposition: That the defendant did so by the use of force or threatening the imminent use of force.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 24    During their deliberations, the jurors sent out a note asking for the "[d]efin[i]tion of force legally." The court indicated that it would instruct the jury to keep deliberating:

> "The defense submitted a suggested response of there is no legal definition as to what constitutes force. State has submitted in writing force is to be determined from the evidence in this indication. Please continue to deliberate.
>
> Since those are both brilliant answers, I prepared a response: Members of the jury, there is no specific legal definition of, in quotation marks, force. That is a fact for the

- 4 -

jury to determine from the evidence presented in this case. Please continue your deliberation." (Internal quotation marks omitted.)

Neither the State nor defense counsel objected to the court's response. The jury found defendant guilty of robbery. Defendant appeals.

¶ 25                                    II. ANALYSIS

¶ 26                        A. Sufficiency of the Evidence of Force

¶ 27        Defendant first claims that the State's evidence was insufficient to prove him guilty of robbery beyond a reasonable doubt. Specifically, defendant argues that the State's evidence did not prove that he used or threatened force where "the only person who used force was the store cashier." We disagree because the evidence, viewed in the light most favorable to the State, showed that defendant struggled with Clark as he took money from the cash register.

¶ 28        In reviewing the sufficiency of the evidence, we determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). We will not substitute our judgment for that of the trier of fact with regard to the credibility of witnesses, the weight to be given to each witness's testimony, or the reasonable inferences to be drawn from the evidence. *Id.* A defendant's conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to his guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 29        In order to prove the offense of robbery, the State must prove beyond a reasonable doubt that the defendant knowingly took property from the person or presence of another "by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2008). " '[T]he degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will.' " *People v. Bowel*, 111 Ill. 2d 58, 63 (1986) (quoting *People v. Williams*, 23 Ill. 2d 295, 301 (1961)).

¶ 30        Viewed in the light most favorable to the State, the evidence was sufficient to prove that the defendant used force because Clark and Tate testified that defendant and Clark struggled over the money he grabbed from the register. Although "a simple snatching or sudden taking of property from the person of another does not of itself involve sufficient force to constitute robbery," force may be established "where a struggle ensues." *People v. Patton*, 76 Ill. 2d 45, 49 (1979).

¶ 31        For example, in *People v. Merchant*, 361 Ill. App. 3d 69, 71 (2005), the victim testified that the defendant snatched money from his hand, and that he and the defendant then "grabbed each other," the defendant "slammed [him] into a window," and they "tussled." (Internal quotation marks omitted.) *Id.* The court recognized that the defendant did not use force when he grabbed the money from the defendant's hand. *Id.* at 74-75. The court still found that the defendant used force when "a mutual struggle ensued during which the defendant pushed [the victim] against the window." *Id.* at 75. The court concluded that "this use of force elevate[d] what would have been mere theft to robbery." *Id.*

¶ 32        Likewise, in *People v. Lewis*, 285 Ill. App. 3d 653, 656 (1996), the court held the defendant used force where "there was a struggle to retain *** money" between the defendant and the victim. In *Lewis*, the victim made a purchase at a store while the defendant stood behind him.

*Id.* at 654. As the store teller laid the victim's change on the counter, the defendant "reached around [the victim] and placed his hand on the money." *Id.* The victim grabbed the defendant's hand and the defendant broke away from the victim's grasp. *Id.* at 654-55. The victim pushed the defendant, defendant then stooped down, and the victim fell over the defendant. *Id.* at 655. The *Lewis* court concluded that the "case involved more than a mere snatching"; rather, "a struggle ensued and force occurred between the victim and the defendant." *Id.* at 656. The court thus affirmed the defendant's robbery conviction. *Id.* at 658.

¶ 33 In this case, like *Merchant* and *Lewis*, the evidence showed that defendant and Clark struggled over the money he snatched from the cash register. Clark and Tate both testified that Clark was "fighting [defendant] off" while he tried to take the money. We recognize that the struggle that took place in this case was less violent than in *Merchant* and *Lewis*. But the State's evidence showed that Clark resisted defendant's attempt to grab the money, at least to the extent that she received broken and bloodied fingernails. However the events precisely transpired, defendant managed to physically overcome this resistance. We emphasize that we must view the evidence in the light most favorable to the State and draw all reasonable inferences in the State's favor. *People v. Wheeler*, 226 Ill. 2d 92, 116 (2007). We hold that the State presented sufficient evidence to prove that defendant used force to sustain his conviction for robbery.

¶ 34 Defendant argues that, because he was acquitted of armed robbery but convicted of simple robbery, the jury must have found that he did not use a gun in the course of the robbery–and without the gun, there was insufficient evidence of force. We have just explained that the physical struggle between defendant and Clark, by itself, was sufficient evidence of force. We thus find it unnecessary to consider defendant's speculation as to what the jury found, or did not find, in acquitting defendant of the greater offense. We note, however, that even if the jury did find that defendant was unarmed, contrary to the testimony of Clark and Tate, we cannot simply assume that the jury wholly rejected those witnesses' testimony regarding the struggle. See *People v. Ellis*, 39 Ill. App. 3d 766, 769 (1976) (a reviewing court may not make assumptions about a jury's specific findings from a bare not-guilty verdict). Because both Clark and Tate testified as to the struggle between defendant and Clark, and we must view that evidence in the light most favorable to the State, the State presented sufficient evidence to prove that defendant used force during the robbery.

¶ 35 B. Jury Instruction for Robbery

¶ 36 Defendant next challenges the trial court's decision to *sua sponte* instruct the jury on the offense of robbery. There is no dispute between the parties, however, that robbery was a lesser-included offense of armed robbery in this case. We agree. Under the "charging instrument" approach we must follow, an uncharged offense is a lesser-included offense if: (1) the allegations in the charging instrument contain a broad foundation or main outline of the lesser offense; and (2) the evidence adduced at trial rationally supports a conviction on the lesser offense. *People v. Kolton*, 219 Ill. 2d 353, 361 (2006). Both elements are met here. The charging instrument alleged that defendant "knowingly took *** United States currency from the person or presence of Selena Clark, by the use of force or by threatening the imminent use of force." Those allegations expressly included the necessary elements of robbery. See 720 ILCS 5/18-1(a) (West 2008) ("A person commits robbery when he or she takes property *** from the person or presence of another by the use of force or by threatening the imminent use

of force."). The evidence at trial also rationally supported a robbery conviction, as the jury could believe defendant's testimony that he was not armed but also believe Clark's testimony that defendant used force to take the money from the cash register. See *supra* ¶¶ 30-34.

¶ 37    Defendant's argument on the *sua sponte* instruction is twofold. First, he argues that the trial court failed to exercise its discretion because the record does not show that the trial court considered all of the necessary factors before instructing the jury. Second, defendant claims that, if the court exercised its discretion, that exercise was an abuse of discretion. We address each of defendant's claims in turn.

¶ 38    We review a trial court's *sua sponte* decision to instruct the jury on a lesser-included offense for an abuse of discretion. *People v. Carter*, 208 Ill. 2d 309, 324-25 (2003). " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Patrick*, 233 Ill. 2d 62, 68 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)). We apply *de novo* review, however, where the question involved is whether the trial court "exercise[d] its discretion within the bounds of the law." *People v. Smith*, 233 Ill. 2d 1, 15 (2009). We thus apply *de novo* review to defendant's first argument, that the trial court did not exercise discretion in any meaningful way before instructing the jury as to robbery.

¶ 39    Defendant argues that the trial court erred because it "gave no hint of what factors it considered much less indicated that it had done the required balancing of the factors." In *People v. Garcia*, 188 Ill. 2d 265, 282 (1999), the Illinois Supreme Court held that, "under appropriate circumstances, a trial court possesses the discretion to instruct a jury *sua sponte* on lesser-included offenses, even where the State does not request such instruction and the defense objects." That decision was based in large part upon the court's decision in *People v. Taylor*, 36 Ill. 2d 483, 491 (1967), where the court suggested factors that a trial court should balance in deciding whether to instruct the jury on a lesser offense, including "the public interest in the punishment of wrongdoers," whether the lesser-included offense instruction would increase the likelihood of a compromise verdict, and "the views of the prosecution and defense as indicated by their requests for instructions." In this case, defendant's argument is essentially one of form: because the trial court did not expressly state the factors it considered, it failed to properly exercise its discretion before giving the robbery instruction.

¶ 40    We find this argument unpersuasive. Neither *Garcia* nor *Taylor* required trial courts to recite a specific list of factors. Certainly, neither case went so far as to say that the mere failure to list certain factors on the record constituted reversible error. Moreover, in this case, the trial court cited *Garcia* before giving the robbery instruction, indicating that the court was familiar with the relevant law, including the factors defendant would have had the trial court state for the record. See *Garcia*, 188 Ill. 2d at 274 (quoting *Taylor*, 36 Ill. 2d at 491). Nothing in the record suggests that the court misunderstood the law or applied an incorrect standard. The trial court gave both the State and defendant ample opportunity to argue against the delivery of a robbery instruction before making its ruling. The record offers no support for defendant's claim that the trial court abdicated its responsibility under *Garcia* and *Taylor*.

¶ 41    Were we to accept defendant's argument, the mere failure to mechanically recite the factors listed in *Garcia* and *Taylor* would constitute error. Not only would such a rule greatly expand the duties of a trial court beyond the standards set in *Garcia* and *Taylor*, but it would also contradict case law eschewing the kind of formalistic rule defendant advances. For example, in *People v. Williams*, 173 Ill. 2d 48, 83 (1996), the Illinois Supreme Court declined

to find that the trial court failed to conduct the proper balancing test before admitting defendant's prior conviction as impeachment evidence simply because "the judge did not expressly articulate it." The court noted that the trial judge had referred to case law reflecting the proper standard and that the parties mentioned the standards to the court. *Id.* The court thus concluded that there was no reason to find that the trial court erred even though "the trial judge *** did not explicitly state that he was balancing the opposing interests." *Id.*

¶ 42    In this case, like *Williams*, we decline to find error simply because the trial court did not recite the factors it considered before instructing the jury. The record shows that the trial court was familiar with the applicable law. Nothing suggests that the trial court disregarded or misunderstood that law. We find no error.

¶ 43    Defendant cites *People v. Walker*, 232 Ill. 2d 113 (2009), and *People v. Whirl*, 351 Ill. App. 3d 464 (2004), to support his argument that the trial court did not exercise its discretion, but neither case is comparable to this one. In *Walker*, the trial court denied the defendant's attorney a continuance even though the attorney admitted to being unprepared to try the defendant's double-murder case because she was mistaken about the date of the trial. *Walker*, 232 Ill. 2d at 117-18. On appeal, the Illinois Supreme Court held that the trial court's denial of a continuance was reversible error because it "mechanically denied the continuance without engaging in thoughtful consideration of the specific facts and circumstances presented in this matter." *Id.* at 126. The court noted that the record did not show a pattern of delay by defense counsel and that nothing in the record suggested that defense counsel requested a continuance "to thwart the administration of justice or as a vehicle for improper delay." *Id.* at 126-28. The court stressed that the trial court's entire consideration of the request for a continuance "comprise[d] less than one page of trial transcript." *Id.* at 129.

¶ 44    In *Whirl*, the defendant was on trial for residential burglary and possession of a controlled substance. *Whirl*, 351 Ill. App. 3d at 466. Prior to trial, the defendant moved to exclude evidence of his 10 prior convictions, including 2 burglary convictions and 2 convictions involving controlled substances. *Id.* In denying the defendant's request to exclude those convictions, the trial court simply noted that the prior convictions were the same as the charged offenses, that the convictions were " 'all within a 10-year period' " of the charged offenses, and that defendant brought his " 'entire past to the stand.' " *Id.* On appeal, the court found that "[t]he record *** reveal[ed] a complete abdication by the trial court of its role in balancing the probative value and prejudicial effect of defendant's prior convictions." *Id.* at 467. The court reached this conclusion based upon the trial court's "simply not[ing] that the convictions were within 10 years of the trial, then rul[ing] that [the] defendant's entire history was fair game." *Id.* The court also noted that the trial court did not appreciate how the similarity between defendant's prior convictions and the charged offenses would increase the prejudicial effect of their admission: "[T]he only real consideration the court seemed to give to any factor was that prior convictions of the crimes for which [the] defendant was on trial should *especially*, rather than sparingly, be used." (Emphasis in original.) *Id.*

¶ 45    In both *Walker* and *Whirl*, the trial courts briefly considered the issues at hand and made decisions that ignored the law and the facts of the cases before them. The same cannot be said of the trial court in this case. To the contrary, the record shows that the trial court carefully considered the arguments of the parties and relevant case law before deciding to instruct the jury. The trial court asked the State about whether robbery was a lesser-included offense of armed robbery in this case, asked for defense counsel's position regarding a robbery

instruction, and cited *Garcia* before making its decision. We cannot conclude that the trial court erred simply because it did not recite the factors it considered in making its decision.

¶ 46 We now turn to the question of whether the trial court abused its discretion in instructing the jury on robbery as a lesser-included offense. While defendant does not contest that robbery was a proper lesser-included offense, he presents three reasons why the trial court's decision to instruct the jury on that offense was an abuse of discretion. First, defendant notes that neither the State nor defense requested the instruction. But that fact alone does not undermine the court's decision. By definition, a decision to instruct the jury *sua sponte* does not come at the request of either party. As noted above, the Illinois Supreme Court has authorized trial courts to instruct juries on lesser-included offenses despite the parties' objections. *Garcia*, 188 Ill. 2d at 282; *Taylor*, 36 Ill. 2d at 491. Moreover, neither party expressed surprise over the trial court's decision. In fact, before formally objecting to the instruction, defense counsel suggested that he would agree to submitting the robbery instruction so long as the theft instruction was also given.

¶ 47 Second, defendant claims his request for a theft instruction rendered the robbery instruction unnecessary. In *Taylor*, the supreme court stated that trial judges should be empowered to *sua sponte* instruct juries on lesser-included offenses because "one whose conduct is unlawful should not escape punishment altogether because a jury does not believe that he is guilty of the greater offense." *Taylor*, 36 Ill. 2d at 491. Citing this proposition, defendant argues that the theft instruction already ensured that he would not escape punishment for taking the money. According to defendant, because he would still be punished even if the jury convicted him of theft, the robbery instruction was unnecessary and unreasonable.

¶ 48 Defendant ignores the critical fact that the evidence at trial supported a robbery conviction. If the jury believed that evidence, a conviction for robbery, not theft, would have been appropriate. One reason that trial courts are empowered to *sua sponte* instruct jurors on lesser-included offenses is to further "society's interest in punishing the defendant for a crime, *no more, no less*, than the crime actually committed." (Emphasis added.) *Garcia*, 188 Ill. 2d at 281. The robbery instruction reflected the appropriate punishment for defendant–no more, no less–if the jury believed that defendant took the money from Clark by force. The theft instruction did not serve the same purpose. The fact that defendant likely would have faced *some* punishment even if the robbery instruction was not given does not make the trial court's decision to give the robbery instruction unreasonable or arbitrary.

¶ 49 Third, defendant claims that the robbery instruction enhanced the possibility of a compromise verdict. But defendant requested and received an instruction for the lesser-included offense of theft. Whether or not the jury received the robbery instruction, the theft instruction already created the possibility for a compromise verdict. It is difficult to see how the trial court's instruction would have greatly increased that risk. Also, nothing in the record suggests that the jury convicted defendant based upon a compromise–the jury's note did not say that it was deadlocked or divided in any way. Based upon the record before us, we cannot say that the trial court's decision to instruct the jury on robbery was arbitrary, fanciful, or unreasonable.

¶ 51    Finally, defendant contends that he was denied his right to effective assistance of counsel when his attorney failed to offer a definition of the term "force" when the jury requested one. We disagree and conclude that defendant has not shown that his attorney's decision not to define "force" prejudiced his right to a fair trial.

¶ 52    To establish a claim of ineffective assistance of trial counsel, defendant must show that his attorney's performance was deficient and that he suffered prejudice as a result, *i.e.*, there was a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [rather than a lack of deficient performance], that course should be followed." *Id.* at 697.

¶ 53    In this case, defendant claims that defense counsel should have offered the following definition of "force," drawn from case law defining that term: "(1) the physical touching of a person such that his power to retain his property is overcome; or (2) putting a person in such fear that his power to retain his property is overcome." Although defendant's proposed definition of "force" accurately states the law (see *Bowel*, 111 Ill. 2d at 63), defendant does not explain how that definition would have helped him avoid a robbery conviction. If the jury believed Clark and Tate regarding the struggle, it could have concluded that defendant engaged in physical touching sufficient to overcome Clark's power to retain the money. See *supra* ¶¶ 30-34. Defendant cannot show that his attorney's failure to offer a definition of force prejudiced him where that definition likely would have led to his conviction.

¶ 54    Moreover, defendant cannot show that there was a reasonable probability that the trial court would have even tendered the jury the definition had counsel presented it. Defendant acknowledges that the Illinois Pattern Jury Instructions, Criminal, do not require the court to define "force" when the jury requests a definition of that term. Defendant cites no case–and we have not found one–in which the failure to define "force" has been considered error. "[W]hen words used in an instruction have a commonly understood meaning *** it is not necessary to define them for the jury by the use of additional instructions. This is especially true when the applicable Illinois Pattern Jury Instructions do not suggest that such an additional definition is necessary." *People v. Bradley*, 192 Ill. App. 3d 387, 393 (1989).

¶ 55    This conclusion is supported by this court's decision in *People v. Sanchez*, 388 Ill. App. 3d 467 (2009). In that case, the jury asked the court for clarification of the terms "incite," "induce," and "predispose," as they were used in defendant's entrapment instruction. *Id.* at 472. The defendant's trial counsel acquiesced to the court's response, which told the jury that it had received all of the instructions and asked the jury to continue deliberating. *Id.* On appeal, we rejected defendant's claim that his trial attorney's failure to offer a definition of those terms constituted ineffective assistance because "[t]here [was] no indication that an additional definition or definitions [were] needed" when the defendant raised his entrapment defense. *Id.* at 478.

¶ 56    Like *Sanchez*, this case involves a jury's request for clarification of a term that is not further defined in the pattern instructions. Neither the instruction defining robbery (IPI Criminal 4th No. 14.01) nor the instruction setting out the elements of robbery (IPI Criminal 4th No. 14.02) states that the court must define "force" when the jury requests a definition for

that term. Defendant has cited no case holding that such additional definition is necessary. Consequently, defendant cannot show either that there was a reasonable probability that the trial court would have accepted his proposed definition of force or that there was a reasonable probability that the definition would have led to his being acquitted of robbery.

¶ 57 Defendant cites *People v. Lowry*, 354 Ill. App. 3d 760, 765-66 (2004), but in that case, the pattern instructions required the court to further define the term the jury sought to clarify. In *Lowry*, defense counsel did not submit a proposed response to the jury's request for clarification of the term "knowingly" as it was used in the offense of aggravated battery with a firearm. *Id.* at 762. However, a pattern instruction defined the term "knowingly," and the committee note to that instruction expressly stated that the court should define knowingly when the jury requests a definition. *Lowry*, 354 Ill. App. 3d at 765-66. The court in *Lowry* also cited case law holding that a trial court commits reversible error when it refuses to define "knowingly" in the face of a jury's request to clarify that term. *Lowry*, 354 Ill. App. 3d at 765-66 (citing *People v. Brouder*, 168 Ill. App. 3d 938, 941 (1988)). Here, unlike *Lowry*, there is no pattern jury instruction defining the term "force" or authority requiring the trial court to clarify that term. Without authority showing that "force" should be defined upon a request from the jury, defendant cannot establish that, if his attorney had proposed such a definition, there was a reasonable probability that the trial court would have delivered it.

¶ 58 Defendant also cites *People v. Coots*, 2012 IL App (2d) 100592, but in that case, the defendant established prejudice because the jury's note indicated that it planned to apply a lower standard than the law required. In *Coots*, the defendant was convicted of drug-induced homicide, which required the State to prove that the defendant unlawfully delivered heroin to the victim. *Id.* ¶¶ 1, 17. During deliberations, the jury sent out a note that asked whether they could interpret the term "delivery" to mean "give." (Internal quotation marks omitted.) *Id.* ¶ 16. The judge, without objection from defense counsel, told the jury to refer to the instructions it had been given. *Id.* On appeal, the court found that the defense counsel's acquiescence to the trial court's response prejudiced the defendant because the jury's question, equating "delivery" to "give," showed that the jury "was at least entertaining the belief that defendant could be found guilty for doing no more than handing heroin to [the victim]," which was incorrect. *Id.* ¶ 53. The court indicated that defense counsel should have given one of two available pattern instructions that defined "delivery." *Id.* ¶ 54. Unlike *Coots*, there is nothing in this case to indicate that the jury had considered applying a lesser standard of "force" than what the law required. Furthermore, unlike *Coots*, there is no pattern instruction defining "force" and nothing to show that the trial court likely would have accepted defendant's proposed definition. We thus find that defendant's reliance on *Lowry* and *Coots* is misplaced.

¶ 59 Defendant has not shown that, if his attorney had accurately defined "force" in response to the jury's question, there was a reasonable likelihood that the outcome of his trial would have been different. Therefore, defendant has not shown that his attorney's alleged ineffectiveness was prejudicial. His *Strickland* claim must fail.

¶ 60 III. CONCLUSION

¶ 61 For the reasons stated above, we affirm defendant's robbery conviction. The evidence, viewed in the light most favorable to the State, was sufficient to prove that defendant used force during the robbery. The trial court did not err in *sua sponte* instructing the jury on robbery–a lesser-included offense of the charged offense–where the court cited relevant case

law in making its decision, and the record does not show that an instruction for robbery was unreasonable or arbitrary. Finally, defendant has not shown that there was a reasonable likelihood that his trial would have been different had his attorney offered a definition of "force" in response to the jury's request.

¶ 62        Affirmed.